Ralph M. JOHNSON, Appellant,

v.

NIAGARA MACHINE & TOOL WORKS,
a New York corporation, Appellee.

No. 80–2106.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1981.

Decided Dec. 22, 1981.

Barbara L. Heck, Schermer, Schwappach, Borkon & Ramstead, Ltd., Minneapolis, Minn., for appellant.

Laura S. Underkuffer, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and COLLINSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Ralph M. Johnson appeals from a final judgment entered in the District Court[1] for the District of Minnesota upon a jury verdict finding in favor of Niagara Machine & Tool Works, Inc. (Niagara), on Johnson's personal injury action. For reversal Johnson argues that the district court erred (1) in granting Niagara's motion for a directed verdict on his duty to warn claim and (2) in admitting into evidence Occupational Safety & Health Administration (OSHA) Mechanical Power Press Regulation, 29 C.F.R. § 1910.217(c)(1)(i) (1981). For the reasons discussed below, we affirm the judgment of the district court.

This action arises from an accident which occurred on June 4, 1976. The following statement of facts is based upon the district court's memorandum order, *Johnson v. Niagara Machine & Tool Works, Inc.*, No. 4–76–Civ. 440 (D.Minn. Nov. 14, 1980). Johnson was operating a Model E45 punch press owned by his employer, Wrico Stamping Co. Wrico is not a party to this action. The press was manufactured by Niagara, a New York corporation which manufactures industrial equipment, and sold to Wrico through a local distributor.

The E45 is a general purpose punch press. The press when sold was equipped with two palm buttons, both of which had to be pressed at the same time in order to activate the press. This method of operation is a safety feature because the operator cannot place one hand between the die and the ram while activating the press. The press is, however, manufactured with a receptacle for a foot switch. Wrico converted the press from the two palm button method of operation to the foot switch. The foot switch is necessary in a strip-feeding operation where the operator uses both hands to position materials in the press and uses the foot switch to activate the press. Johnson was strip-feeding the press at the time of the accident.

Niagara did not equip the E45 press with barrier-type point of operation guards which would physically prevent an operator from placing any part of the body in the press. Niagara did, however, attach the following warning plate on the front of the press at approximately eye level:

## WARNING

### TO PREVENT SERIOUS BODILY INJURY

NEVER Place any part of your body under the slide (ram) or within the die area unless power is off, flywheel is stopped and the slide (ram) is blocked up.

NEVER Operate, install dies, or maintain this machine without proper instruction and without first reading and understanding the operator's or machine manual.

It is the employer's responsibility to implement the above and also to provide proper dies, guards, devices or means that may be necessary or required for any particular use, operation, set-up or service.

Do not remove this sign from this machine.

* The Honorable William R. Collinson, United States Senior District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota.

The operator's or machine manual, supplied by Niagara, specifically warned that point of operation guards are recommended, may be required by code for foot switch operation, and are the responsibility of the user.[2]

Johnson had never operated an E45 press before the day of the accident, although he did have some experience operating smaller presses and other industrial equipment. Johnson was instructed by his foreman how to operate the press. The foreman demonstrated the operation. Johnson had produced about forty parts when one piece of material became stuck in the press. Johnson reached into the press to knock the material out. He could not knock it out and reached up with his right hand to press the STOP button in order to shut off the power before extracting the material. Johnson inadvertently placed his left hand in the press and, while reaching up with his right hand, pressed the foot switch activating the press. Johnson's left hand was partially crushed in the press; he lost his left index and middle fingers and 75% of the use of his left thumb.

Johnson brought this diversity action against Niagara for damages. Johnson alleged Niagara was liable under negligence and strict liability theories for (1) failing to adequately warn operators of the dangers involved in operating the press with a foot switch and (2) defective and unreasonably dangerous design (failing to equip the press with an electronic interlock device to prevent operation of the press with a foot switch without a point of operation guard in place). At the end of Johnson's case the district court granted Niagara's motion for a directed verdict on the failure to warn claim. The defective design claim was submitted to the jury. The jury returned a special verdict finding that the press as manufactured was not in a defective condition unreasonably dangerous to Johnson,

that neither Johnson nor Niagara was causally negligent, that Wrico (a nonparty) was 100% at fault, and that Johnson's damages were $200,000. Johnson's motion for a new trial was denied, and this appeal followed.

Johnson first argues that the district court erred in granting Niagara's motion for a directed verdict on the failure to warn claim. We disagree. The federal standard and the Minnesota standard for ruling on a motion for directed verdict are substantially the same. *See Wetzel v. Eaton Corp.*, 62 F.R.D. 22, 25–28 (D.Minn.1973) ("practical equivalent"); *see also J. N. Sullivan & Assocs. v. F. D. Chapman Construction Co.*, 304 Minn. 334, 231 N.W.2d 87, 89 (1975).

> In each, a directed verdict is permissible only when the evidence, viewed most favorably to the non-movant, cannot reasonably give rise to an inference supportive of the non-movant's position; in each, a directed verdict must be granted when the non-movant's case rests solely upon speculation and conjecture lacking in probative evidentiary support.

*Wetzel v. Eaton Corp., supra*, 62 F.R.D. at 28.

 As found by the district court, Johnson's claim that he had read the warning plate was unsupported by his own testimony. Johnson testified that he had never read the warning even though he knew it was on the press and had glanced at it. The district court further found that Johnson's unsuccessful attempt to knock the material out of the press, contrary to the instructions on the warning plate, did not support an inference that he had in fact read the warning plate. As noted by the district court, an issue as to the adequacy of a warning necessarily presupposes that the operator has read the warning. The district court did not err in granting a directed verdict against Johnson on the failure to warn claim. *See Sowles v. Urschel Labora-*

---

**2.** The operator's or machine manual provided in part:

CAUTION: For utmost safety, press operators should never be allowed to place their hands into the die area. To this end, Niagara strongly urges the use of point-of-operation guards for all modes of operation. It is specifically pointed out that when foot switches are used, most state codes make the use of point-of-operation guards mandatory. Point-of-operation guards are a user's responsibility as their design must conform to the type of die used, which is beyond the knowledge and control of the press manufacturer.

*tories, Inc.*, 595 F.2d 1361, 1365 (8th Cir. 1979) (applying Minnesota law).[3]

Johnson next argues that the district court erred in admitting into evidence OSHA Mechanical Power Press Regulation, 29 C.F.R. § 1910.217(c)(1)(i) (1981), which directs employers to provide point of operation guards.[4] Johnson argues that this OSHA regulation was not relevant to the issues of negligent or defective design and, even if relevant, the prejudicial effect of the regulation substantially outweighed its probative value, *citing Murphy v. L & J Press Corp.*, 558 F.2d 407, 411 (8th Cir. 1977). We disagree.

■ Minnesota law controls the substantive issues in this diversity case. Under the Minnesota comparative negligence statute, Minn.Stat.Ann. § 604.01 (West Supp. 1981), "[i]f there is 'evidence of conduct which, if believed by the jury, would constitute negligence [or fault] on the part of the person . . . inquired about,' the fault or negligence of that party should be submitted to the jury" even though that person is not a party to the lawsuit. *Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn.1978), *citing Connar v. West Shore Equipment, Inc.*, 68 Wis.2d 42, 45, 227 N.W.2d 660, 662 (1975); *see also Lines v. Ryan*, 272 N.W.2d 896 (Minn.1978) (banc).

> [W]hen apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release.

*Lines v. Ryan, supra*, 272 N.W.2d at 902–03, *citing Connar v. West Shore Equipment, Inc., supra*, 68 Wis.2d at 44, 227 N.W.2d at 662. Here, the OSHA regulation was relevant to the issue of the alleged negligence of Wrico, Johnson's employer, even though Wrico was not a party to this action.

■ Nor can we agree that the district court abused its discretion in determining that the probative value of the OSHA regulation was not substantially outweighed by its prejudicial effect. Fed.R.Evid. 403. As noted above, the OSHA regulation was relevant to the issue of the alleged negligence of Wrico. Further, as noted by the district court, the conduct of Wrico was not relevant to the liability of Niagara for defective or unreasonably dangerous design. *Cf. Heckman v. Federal Press Co.*, 587 F.2d 612, 616–17 (3d Cir. 1978) (applying Pennsylvania strict liability law). The district court expressly instructed the jury that the OSHA regulation was applicable only to Wrico and not applicable to Niagara. The district court also fully instructed the jury as to the elements of Johnson's negligence and strict liability counts against Niagara.

*Murphy v. L & J Press Corp.* is distinguishable. In light of the district court's cautionary instructions in the present case, the OSHA regulation did not inject a false issue into the trial. 558 F.2d at 412. Under Minnesota law the negligence of Wrico was an issue in the case to be determined by the jury. Nor did the OSHA regulation transform the questions about the feasibility of the manufacturer providing the proper point of operation guard as a matter of design into a question of "who had the duty

---

**3.** The district court further found that the warning plate was attached to the press at the time of the accident and was located in a conspicuous place on the press (about eye level). In fact Johnson testified that he had seen the warning plate but had not read it. *Cf. Harless v. Boyle-Midway Div., American Home Prods.*, 594 F.2d 1051, 1054 (5th Cir. 1979) (warning must be in form reasonably expected to catch attention of reasonably prudent person under circumstances). As noted by the district court, the present case does not involve an inadequate warning, *see Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79 (4th Cir. 1962) (substantively incom-

plete warning in very small print), or no warning at all, *see Karjala v. Johns-Manville Prods. Corp.*, 523 F.2d 155 (8th Cir. 1975). *Johnson v. Niagara Mach. & Tool Works, Inc.*, No. 4–76–Civ. 440 (D.Minn. Nov. 14, 1980) (slip op. at 5–6).

**4.** 29 C.F.R. § 1910.217(c)(1)(i) (1981) provides: "It shall be the responsibility of the employer to provide and insure the usage of 'point of operation guards' or properly applied and adjusted point of operation devices on every operation performed on a mechanical power press. See Table O–10."

to guard?" *Id.* at 411; *cf. Heckman v. Federal Press Co., supra,* 587 F.2d at 616 n.2 (assuming proper foundation, state point of operation guard regulations admissible as relevant to whether manufacturer could expect buyer to install safety equipment). The questions about the safety of the press as designed by Niagara remained in the case[5] and were resolved by the jury against Johnson.

Accordingly, the judgment of the district court is affirmed.

5. Whatever the effect the regulations [which required the use of point of operation guards and placed the responsibility upon the employer and employee] might have as between employer and employee does not extend to relieve the manufacturer of its liability under § 402A [of the RESTATEMENT (SECOND) OF TORTS] as a matter of law. If a manufacturer fails to provide reasonable safety devices for a product and thus creates an unreasonable risk of harm to the user, the fact that the manufacturer may expect the user to provide a protective appliance is not sufficient to preclude liability in most circumstances. The issue is one which should be decided by a jury in light of such matters as the feasibility of incorporating safety features during manufacture of the machine, the likelihood that users will not secure adequate devices, whether the machinery is of a standard make or built to the customer's specifications, the relative expertise of the manufacturer and customer, the extent of risk to the user, and the seriousness of injury which may be anticipated.
*Heckman v. Federal Press Co.,* 587 F.2d 612, 616–17 (3d Cir. 1978) (footnote and citations omitted).