John KEENAN, petitioner, Appellant,

v.

HYDRA–MAC, INC., Respondent (C1–87–1889), Appellant (C3–87–1926),

George Plass Sales & Service, Inc., Respondent.

HYDRA–MAC, INC., third party plaintiff, Respondent (C1–87–1889), Appellant (C3–87–1926),

v.

Joe PROM, individually, and d.b.a. Prom's Auto Salvage, third party defendant, Respondent.

Nos. C1–87–1889, C3–87–1926.

Supreme Court of Minnesota.

Jan. 20, 1989.

Frederic L. Grunke, St. Cloud, for John Keenan.

William D. Flaskamp, Minneapolis, for Hydra–Mac, Inc.

Kevin S. Carpenter, Michael D. LaFountaine, St. Cloud, for George Plass Sales.

Nikki K. Zielke, Minneapolis, for Joe Prom.

**1.** Plass' petition for review of negligence and taxation of cost issues was denied by this court and we accepted only Keenan's petition relating to the collateral source issue.

OPINION

POPOVICH, Justice.

After a jury trial in Stearns County District Court, defendants Hydra–Mac, Inc. and George Plass Sales and Service were found liable to the plaintiff, John Keenan, for damages he suffered while operating certain machinery. Following a stipulation between Hydra–Mac, Plass and the employer, Joe Prom, d.b.a. Prom's Auto Salvage, the trial court, applying Minn.Stat. § 548.36, reduced the damage award by deducting much of the workers' compensation benefits paid to the plaintiff up to the time of trial. On appeal, the Minnesota Court of Appeals affirmed the trial court's finding of negligence and application of the collateral source statute, Minn.Stat. § 548.36, to the workers' compensation payments, but reversed on the amount of the reduction. *Keenan v. Hydra–Mac*, 422 N.W.2d 741 (Minn.App.1988). We reverse the court of appeals' decision that Minn. Stat. § 548.36 requires treatment of plaintiff's workers' compensation benefits as a collateral source [1] and remand to the trial court.

I.

The facts of this case are essentially undisputed. On May 15, 1979, John Keenan was injured while operating a Hydra–Mac skid steer loader in the course of his employment. Keenan collected workers' compensation benefits and then commenced suit against Hydra–Mac and the seller of the loader, George Plass Sales & Service, Inc. The defendants asserted *Lambertson* [2] contribution claims against the employer, Prom. The case proceeded to trial and the jury apportioned fault as follows: Hydra–Mac, 35 percent; Plass, 25 percent; Prom, 25 percent; and plaintiff, 15 percent.

**2.** *Lambertson v. Cincinnati Corporation,* 312 Minn. 114, 257 N.W.2d 679 (Minn.1977).

Based upon the jury's special verdict, the trial court determined damages to the date of trial to be $44,869.72, and the present value of the future damages to be $37,520.42, for a total of $82,390.14. The trial court reduced the award by 15 percent to reflect Keenan's contributory fault and arrived at a net damage award of $70,031.62, exclusive of interest, costs, and disbursements.

By the time of trial, Keenan had received $56,815.65 in workers' compensation benefits from Prom's insurer, Liberty Mutual Insurance Company. Pursuant to Minn. Stat. § 176.061 (1986), the employer had a subrogation interest in the plaintiff's claim. Proof presented at trial included elements of the subrogation claim, including medical expenses and lost wages.

Between the date of the verdict and the date set for hearing on post-trial motions, and before judgment was entered, defendants Hydra–Mac and Plass entered into an agreement with Prom and Liberty Mutual which purported to "waive" subrogation rights in exchange for the defendants' release of their *Lambertson* contribution claims. The post-trial agreement was negotiated without the knowledge or consent of John Keenan. The intent of the agreement was to have workers' compensation benefits paid to the date of trial treated as a collateral source pursuant to Minn.Stat. § 548.36, subd. 2.

The trial court determined that, in view of the post-trial agreement, the workers' compensation benefits were a "collateral source" within the meaning of Minn.Stat. § 548.36, but reduced the verdict in favor of Keenan by only $39,869.72, the amount of payments by Liberty Mutual for loss of earnings and medical expenses.

On appeal, the intermediate court of appeals affirmed the trial court's conclusion that the workers' compensation benefits

constituted a collateral source; however, it reversed the trial court's decision limiting the deduction to the award for loss of earnings and medical expenses to the date of trial and held that the entire judgment, including that portion attributable to future damages, was subject to the collateral source deduction. We granted Keenan's petition for review on June 23, 1988.

## II.

This case involves the application of two statutes to essentially undisputed facts. Thus, this court need not give deference to the trial court's resolution of the legal issue. *See Frost–Benco Elec. Ass'n v. Minnesota Public Utilities Comm'n*, 358 N.W.2d 639, 642 (Minn.1984); *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 581 (Minn.1977). The trial court concluded the employer, Joe Prom, did not formally assert subrogation claims, as described in Minn.Stat. § 548.36, subd. 2, and the workers' compensation payments already received constituted a collateral source as described in Minn.Stat. § 548.36, subd. 1. The court of appeals held the entire amount was a collateral source. We disagree with both courts.

## III.

Normally, when an employer and its insurer have paid workers' compensation to the injured employee, the employer is subrogated to the right of the employee to recover from the third-party tortfeasors. *Liberty Mutual Insurance Co. v. Nutting Truck and Caster Company*, 295 Minn. 211, 215, 203 N.W.2d 542, 544 (1973). Minn.Stat. § 176.061, subd. 6, governing claims against third parties by those covered by workers' compensation, creates a statutory formula for the apportionment of damage awards.[3] Part of the damage award is

3. Minn.Stat. § 176.061, subd. 6(a), provides:
  Subd. 6. Costs, attorney fees, expenses. The proceeds of all actions for damages or of a settlement of an action under this section, except for damages received under subdivision 5, clause (b) received by the injured employee or the employee's dependents or by the employer or the special compensation fund,

as provided by subdivision 5, shall be divided as follows:
  (a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then
  (b) One-third of the remainder shall in any event be paid to the injured employee or the

apportioned to the employer in satisfaction of the subrogation interest. The formula is also designed to split the costs of prosecuting claims, including attorney fees, between the parties that benefit from the award, both the employee and the employer. *See Hodder v. Goodyear Tire and Rubber Co.*, 426 N.W.2d 826, 839 (Minn. 1988). In the instant case, in reducing the amount of Keenan's award by the full amount of the workers' compensation paid as a collateral source, instead of the statutory formula amount, the court of appeals in effect held that all prosecution costs come from Keenan's share of the award.

Petitioner argues that Prom's subrogation rights were asserted by commencement of the tort action against Hydra–Mac and Plass, despite Prom's complete failure to formally assert those rights. Petitioner cites *Liberty Mutual* in support of this proposition. In *Liberty Mutual,* an employer's insurer wishing to assert its subrogation rights attempted to do so after the running of the statute of limitations on the employee's underlying tort claim. *Liberty Mutual,* 295 Minn. at 213–14, 203 N.W.2d at 543–44. The employee had, on his own, initiated suit in a timely manner. This court said, "[O]nce Liberty Mutual paid workmen's compensation benefits, it was subrogated to any rights [employee] had against the defendants, * * *." *Id.* at 214, 203 N.W.2d at 544. We added, "The employee has the right to commence the action against the third-party tortfeasor, but when he does so, after receiving compensation benefits, he is suing not only on his own behalf but also on behalf of the subro-

gated employer * * *." *Id.* at 215, 203 N.W.2d at 544. Accordingly, we allowed the employer's insurer to maintain the action.

Prom argues the rationale of *Liberty Mutual* does not apply here because such application would force Prom, in effect, to assert its rights against its will. Respondent's counsel admitted at oral argument, however, that Prom would have been free to formally assert its subrogation interest for the first time following the jury verdict. Thus, Prom received the benefit of our decision in *Liberty Mutual,* as its right to subrogation was preserved by Keenan's assertion of his claim against the tortfeasors. Indeed, it is unlikely Plass and Hydra–Mac would have stipulated to a waiver of the *Lambertson* contribution claims unless Prom had a viable subrogation right. The continuing viability of Prom's subrogation interest, despite Prom's failure to formally assert that interest, is what allowed Prom to wait until the close of trial to determine its course of action. We think it would be anomalous and unprincipled to allow Prom to enjoy the benefit of our decisions in preserving its subrogation interest, yet escape the full import of those decisions. We therefore hold Prom's subrogation interest was asserted by Keenan's commencement of suit.[4] Therefore, the collateral source statute is not applicable, since Minn.Stat. § 548.36, subd. 2(1), provides the court shall determine "amounts of collateral sources that have been paid for benefit of the plaintiff or are otherwise available * * * except those for which a subrogation right has been asserted * * *."

---

employee's dependents, without being subject to any right of subrogation.

(c) Out of the balance remaining, the employer or the special compensation fund shall be reimbursed in an amount equal to all benefits paid under this chapter to or on behalf of the employee or the employee's dependents by the employer or special compensation fund, less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or dependents from the other party multiplied by all benefits paid by the employer or the special compensation fund to the employee or the employee's dependents.

(d) Any balance remaining shall be paid to the employee or the employee's dependents,

and shall be a credit to the employer or the special compensation fund for any benefits which the employer or the special compensation fund is obligated to pay, but has not paid, and for any benefits that the employer or the special compensation fund is obligated to make in the future.

There shall be no reimbursement or credit to the employer or to the special compensation fund for interest or penalties.

4. We do not decide today whether a pretrial affirmative waiver of an employer's subrogation claim might cause the collateral source statute to apply.

Our decision today is reinforced by the equitable principles we announced in *Hodder v. Goodyear Tire and Rubber Co.,* 426 N.W.2d 826 (Minn.1988). In *Hodder,* we held an award for medical expenses under Minn.Stat. § 176.061, subd. 7, an action lying exclusively with the employer, would be subject to the statutory formula when that action was maintained in one suit with the employee's tort claims. *Id.* at 838. The court reasoned the employer might otherwise use subdivision 7 in an attempt to avoid the statutory formula and not contribute to the employee's prosecution costs. *Id.* The court went on to hold that even where the employer paid for its own legal services in protecting its subrogation rights, it must contribute to the employee's legal costs under the statutory formula. *Id.* at 839. Application of the statutory formula was required because those who benefited from the recovery were obligated to share in the cost of its prosecution. *Id.*

Prom argues it did not receive any amount of the verdict. Clearly, however, Prom used its subrogation rights to obtain something of value. Prom was liable in contribution to Hydra–Mac and Plass for its proportionate share (25%) of the damage award. *See Lambertson,* 312 Minn. at 121–24, 257 N.W.2d at 684–86. Prom could avoid paying any contribution and save the necessary legal costs associated with the contribution claim because Prom "gave up" its now valuable right to collect its subrogation interest. In strictly economic terms, Prom essentially "sold" its subrogation interest and "purchased" the contribution rights of the third-party tortfeasors. Thus, the value of the benefit Prom received as a result of plaintiff's suit can be measured by the "sale price" of the subrogation interest. The amount Prom received in the "sale" was the amount the defendants could have collected in contribution, *i.e.,* Prom's proportionate share of the damage award (25% of $70,000), plus whatever legal costs Prom saved by settling the case. · That Prom did not actually take money out of the award is irrelevant to the question of whether Prom benefited from the plaintiff's successful prosecution of his claim.

We think the reasoning of *Hodder* applies and that the damage award must be subject to the statutory formula of Minn.Stat. § 176.061, subd. 6, which in turn means the collateral source deduction of Minn.Stat. § 548.36, subd. 1, does not apply.

### IV.

We hold today that the workers' compensation benefits in issue under these facts are not subject to the collateral source deduction contained in Minn.Stat. § 548.36. We therefore need not reach the question of which portions of workers' compensation benefits should be deducted under Minn. Stat. § 548.36. This matter is remanded to the trial court for apportionment as provided by Minn.Stat. § 176.061, subd. 6.

REVERSED AND REMANDED.

COYNE, J., took no part in the consideration or decision of this case.