**Donna Jean FOLSTAD, n/k/a Donna Jean Fairbanks, Respondent,**

v.

**Nancy Irene EDER, et al., Petitioners, Appellants.**

No. C6–90–585.

Supreme Court of Minnesota.

April 5, 1991.

Thomas A. Harder, Jardine, Logan & O'Brien, St. Paul, for appellants.

Douglas E. Schmidt, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for respondent.

SIMONETT, Justice.

If, prior to trial of the employee's tort action, the employer-insurer settles its subrogation claim with the defendant tortfeasor, does either the allocation formula of Minn.Stat. § 176.061, subd. 6 (1990) or the collateral source deduction of Minn. Stat. § 548.36 (1990) apply? The trial court thought the collateral source deduction applied and the court of appeals thought the allocation formula governed. We disagree with both and reverse.

Plaintiff-employee Donna Fairbanks sued defendant-appellants Nancy and Janos Eder for personal injuries sustained when plaintiff's car collided with defendants' car (driven by Nancy Eder and owned by Janos Eder) in September 1984. Plaintiff's complaint claimed damages for hospital and medical expenses and loss of income, as well as for general damages.

Plaintiff Fairbanks was in the scope and course of her employment with the Westminster Corporation at the time of the accident. Fairbanks' medical expenses of $7,717 were paid by her employer's workers' compensation insurer, Wausau Insurance Company. When plaintiff commenced suit against the defendants Eder, she notified Wausau that the carrier's subrogation

claim was included in the lawsuit. Wausau acquiesced in the inclusion.

On May 8, 1989, the case was called for trial. In chambers, before trial started, counsel for defendants Eder advised the court and plaintiff's counsel that defendants had settled Wausau's subrogation claim directly with Wausau, and had taken an assignment of any claims which Wausau might have. Counsel said he was waiving Wausau's claims, and that after trial he would move for "a complete set-off" pursuant to the collateral source statute or, alternatively, for "reimbursement" under Minn.Stat. § 176.061, subd. 6 of the Workers' Compensation Act. Subsequently defendants disclosed that they had paid Wausau $3,000 to settle the subrogation claim.

The jury awarded plaintiff damages to date of verdict of $9,657.14 for medical expenses, $10,000 for emotional distress, and $5,000 for pain and disability. The jury awarded no future damages and found defendant Nancy Eder 70 percent at fault and plaintiff Fairbanks 30 percent.[1]

The trial court first reduced the aggregate verdict of $24,657.14 by 30 percent to $17,260 (to account for plaintiff's 30 percent fault). The trial court then applied the collateral source statute, Minn.Stat. § 548.36, reducing plaintiff's recovery by a further $6,760 in medical expenses (70 percent of $9,657.14). This left plaintiff a net of $10,500, out of which she pays her attorney.

The court of appeals in an unpublished opinion reversed and remanded. The appeals panel held that the jury's award of $17,260 ($24,657.14 reduced for 30 percent fault) should have been distributed under section 176.061, subd. 6 of the Workers' Compensation Act. We granted defendant tortfeasors' petition for further review.

The problem in this case arises from the interplay of two statutes, the Workers' Compensation Allocation Statute, Minn.

Stat. § 176.061, subd. 6 (hereafter referred to as the subdivision 6 formula), and the Collateral Source Statute, Minn.Stat. § 548.36. Both statutes govern slightly different aspects of a compensation carrier's subrogation rights in an employee's action against a third-party tortfeasor.

When an employee recovers on her tort claim in its entirety, the subdivision 6 formula provides for allocation roughly as follows: (a) first, payment of collection costs, probably about one-third; (b) one-third of the remainder free and clear to the employee; (c) payment of the compensation carrier's subrogation claim less a pro rata share of the attorney fees; and (d) any balance remaining to the employee, subject to a credit to the employer for benefits yet to be paid.

The collateral source statute on the other hand provides that if (1) plaintiff's award includes damages to compensate plaintiff for losses for which she has already been compensated by a collateral source (such as workers' compensation benefits); and if (2) plaintiff has not asserted the collateral source's subrogation rights in her action; then, to avoid a double recovery by plaintiff, the trial court deducts the amount of the collateral source from plaintiff's award. In this case, the trial court felt Wausau's subrogation claim had not been asserted and therefore deducted the medical expenses awarded by the jury from plaintiff's recovery. *See* footnote 5, *infra*.

In *Keenan v. Hydra–Mac, Inc.*, 434 N.W.2d 463 (Minn.1989), after the jury's verdict but before post-trial motions were heard, the employer settled its workers' compensation subrogation claim with the defendant tortfeasor; and then, claiming its subrogation claim was no longer being "asserted," the employer sought to deduct the amount of compensation benefits paid to date of trial from plaintiff's award pursuant to the collateral source statute. We held the settlement of the subrogation

---

**1.** The jury also found plaintiff had sustained no permanent injury and no disability for 60 days or more. In other words, then, plaintiff met the no-fault threshold for a tort action only because her medical expenses exceeded $4,000. Minn. Stat. § 65B.51, subd. 3 (1990). Apparently, plaintiff had incurred $1,940.14 more medical expense prior to trial, not paid for by the compensation carrier, which raised the medical expense damages to more than the subrogated amount of $7,717.

claim, occurring after the tort trial had started, came too late for the employer-insurer to invoke the collateral source deduction. We left open, however, "whether a pretrial affirmative waiver of an employer's subrogation claim might cause the collateral source statute to apply." *Id.*, 434 N.W.2d at 466 n. 4.

It is this issue, left open in *Keenan*, that is now before us.

## I.

Some background might first be helpful. An injured employee who has received workers' compensation benefits and who has a tort action against a third-party tortfeasor, has a number of options, including:

(1) The plaintiff-employee *litigates her entire claim* including the compensation carrier's subrogation interest through to a verdict; the aggregate recovery is then shared by the plaintiff-employee and the compensation carrier according to the subdivision 6 formula of the Workers' Compensation Act. *See, e.g., Kempa v. E.W. Coons Co.*, 370 N.W.2d 414, 419 (Minn.1985). Or,

(2) The plaintiff-employee *settles her entire claim* including the subrogation interest, and, again, the settlement recovery is shared by the employee and the compensation carrier in accordance with the subdivision 6 formula. If the injured employee has a spouse with a loss of consortium claim, the employee may elect to have an appropriate portion of the overall settlement set aside in satisfaction of the consortium claim, leaving only the remaining portion of the settlement subject to the subdivision 6 formula, as provided in *Henning v. Wineman*, 306 N.W.2d 550, 553 (Minn.1981). Or,

(3) The employee settles with the third party tortfeasor in a *Naig* settlement,

*i.e.*, she settles for all items of tort damage not covered by the Workers' Compensation Act, and this settlement recovery is not subject to the subdivision 6 formula.[2] The compensation carrier then pursues its subrogation claim alone against the third party tortfeasor.

On the other hand, the compensation carrier also has some options with respect to its subrogation claim, such as—

(1) Leaving the initiative with the plaintiff-employee to collect its subrogation claim as part of the employee's tort action, the recovery being subject to the subdivision 6 formula. Or,

(2) Settling the subrogation claim directly with the third party tortfeasor, leaving the employee free to pursue her remaining claim against the third party tortfeasor. *See Johnson v. Farmers Union Cent. Exchange*, 414 N.W.2d 425, 428 (Minn.App.1987) (employer-insurer "waived" its subrogation rights prior to trial). If this settlement occurs after trial of the employee's tort action has commenced, *Keenan* holds the subdivision 6 formula applies so as to require the compensation carrier to share in the costs of collection.

It should be kept in mind that the compensation carrier, by statute, has its own "separate additional cause of action" for medical expenses paid and for other compensation payable. Section 176.061, subd. 7 (1990). The compensation carrier can intervene in the employee's tort action or maintain a separate action for recovery of benefits either in the employer's name or in the name of the employee. Section 176.-061, subd. 5. If fault on the part of the employer is not involved, the claim may be viewed as one for indemnity. Section 176.-061, subd. 10.[3] In other words, the com-

---

**2.** *See Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977). In August 1988, plaintiff Fairbanks notified Wausau by letter of pending *Naig* settlement negotiations, but apparently nothing further came of this by the time the case was called for trial in May 1989.

**3.** Section 176.061 speaks of the "employer's" subrogation or indemnity claim even though it is usually the employer's workers' compensation

carrier that is the real party in interest. At times, therefore, for simplicity and depending on the context, we will refer to the subrogation claim as belonging to the compensation carrier; at other times (such as when the employer's fault is put at issue in a *Lambertson* contribution claim), we may refer to the claim as the employer's claim. These usages, it should be understood, are merely shorthand references for the dual persona of employer-insurer which

pensation carrier is pretty much free to dispose of its subrogation claim as it sees fit. If the compensation carrier permits its claim to be included in the employee's claim, however, the subdivision 6 formula contemplates that the compensation carrier will share in the costs of collection incurred by the employee. Part of the problem here is how are the collection costs to be borne when the employee and the compensation carrier go their separate ways prior to trial.

## II.

So much for background. The issue in this appeal is what happens if the compensation carrier selects its second option and settles with the third party tortfeasor prior to trial? Does the subdivision 6 formula still apply? We think not. Neither do we think there is any need to apply the collateral source deduction.

## A.

■ An employee is entitled under a *Naig* settlement to settle her claim for all damages not covered by workers' compensation free and clear of the subdivision 6 formula. Defendants argue the compensation carrier should likewise be able to settle its subrogation claim with the tortfeasor free and clear of the subdivision 6 formula. We believe there is merit to this argument.

By "free and clear of the subdivision 6 formula," we mean that the employee keeps intact her *Naig* recovery, pays her own collection costs, and waives any rights she might have under the subdivision 6 formula to what the compensation carrier might subsequently recover from the tortfeasor on its subrogation claim. In other words, the employee waives her right to the "one-third" outright share she would otherwise receive under the formula. Likewise, when the compensation carrier independently settles its subrogation claim, it waives any rights it might have to the employee's subsequent recovery, specifically, the right to claim a portion of the employee's recovery as a credit against future compensation payable. *Cf. Johnson, su-*

*pra.* In other words, when either the employee or the compensation carrier settles their own claim, the employee's third party tort action has been effectively separated into one claim for damages recoverable under workers' compensation and another claim for those damages not recoverable under workers' compensation. There is, consequently, no need to use the subdivision 6 formula.

■ An objection, however, may arise with respect to collection costs. Is it fair for the employer-insurer to settle its subrogation claim without sharing in the attorney fees and costs incurred by the plaintiff-employee whose prosecution of her tort claim may have contributed to the employer-insurer's ability to negotiate a settlement? Should not the employer-insurer bear a proportionate share of the expenses of collection as required by the subdivision 6 formula? In *Keenan, supra,* for example, the employer-insurer asserted its subrogation claim throughout the trial to a verdict, and then settled with the defendant tortfeasor. We thought it unfair that the employer could take advantage of the employee's successful prosecution of the entire tort claim to a verdict without sharing in the costs of prosecution. *Id.,* 434 N.W.2d at 466–67. We held, therefore, that notwithstanding the postverdict settlement, the subdivision 6 formula must be applied to the entire verdict, including the subrogation claim.

We think, however, the *Keenan* rationale has much less force when the employer-insurer settles its subrogation claim prior to trial. Presumably the employer-insurer gets the benefit of the pretrial preparation conducted by the employee's attorney, but, ordinarily, this pretrial preparation would have been conducted anyway by the plaintiff-employee in preparing for trial of her damages not covered by workers' compensation. Ordinarily it would be no great burden for plaintiff's attorney to carry the compensation carrier's subrogation claim through pretrial; indeed, not to have the employer intervening in plaintiff's suit as a

can be said to hold the subrogation or indemni-    ty claim.

party openly asserting its subrogation rights is probably a tactical advantage to plaintiff in presenting her case to a jury. Then, too, the employee's attorney's first obligation is to the employee, and, in carrying out that obligation, counsel may elect to settle the employee's claim on a *Naig* settlement and to abandon the compensation carrier. Plaintiff's attorney does not have the same allegiance to the compensation carrier as to the plaintiff, and, consequently, the attorney does not have the same right to expect remuneration from the compensation carrier as from the plaintiff. When, then, should collection costs under the subdivision 6 formula be imposed?

We conclude the best solution is to hold the subdivision 6 formula does not apply if the compensation carrier settles any time prior to the commencement of trial. Trial commences with selection of the jury. It seems desirable to have a bright line cutoff for the application of the subdivision 6 formula, and commencement of the trial serves as a workable demarcation line.

The possibility of unfairness to plaintiff's attorney, as suggested by the concurrence, may at times exist but is unlikely and is outweighed by the need for a bright line to guide the parties in their settlement negotiations. In commencing a third party tort action on behalf of an injured employee, prudent counsel will take into account the many factors bearing on an ultimate recovery. For example, in a case where the value of the lawsuit lies in the subrogation interest and there is no contribution claim under *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), prudent counsel might well make suitable fee arrangements with the compensation carrier before undertaking the lawsuit.

#### B.

We see no need for the collateral source statute to apply in this case either.

■ Under Minn.Stat. § 548.36, "when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources," a party may file a post-trial motion to determine the amount of collateral sources. Subd. 2. The trial court reduces plaintiff's award by the amount of the collateral sources paid on plaintiff's behalf or "otherwise available" to the plaintiff, "except those for which a subrogation right has been asserted." *Id.* If plaintiff were able to keep awarded subrogation damages for herself because the subrogee had not asserted a claim to them, plaintiff would be making an impermissible double recovery; therefore, if the collateral source has not been asserted by the subrogee, it is to be deducted. On the other hand, when subrogated damages are asserted in plaintiff's lawsuit by the subrogee, those damages when recovered in plaintiff's action are to be paid over to the subrogee, and there is no double recovery by the plaintiff; consequently, the collateral source is not deducted from plaintiff's award when it has been asserted by the subrogee.

When the subrogated damages have been separated out of plaintiff's action and settled by the compensation carrier prior to trial, there is nothing left for the collateral source statute to act upon. Ordinarily there is no need to continue to assert in plaintiff's action a subrogation claim that has been settled and is now out of the lawsuit. There is no need to deduct what is no longer there to be deducted.

There may be instances, however, where the jury might still be asked to determine the amount of a subrogation claim that has been settled. As in the case before us now, the plaintiff-employee may need to prove medical expenses of $4,000 or more for the limited purpose of meeting the threshold for maintaining her tort action, and she should, of course, be permitted to prove her threshold. *See* footnote 1, *supra.* The jury need not know the subrogation claim has been settled.[4]

---

4. Because of the complexity of employee third party tort actions, there is merit, we think, in trying these actions before a jury as much like an ordinary personal injury tort action as possi- ble. *See, generally,* Bearse & Paulsrud, *Accommodating the Competing Goals in Minnesota's Third Party Workers' Compensation Claims,* 10 Hamline L.Rev. 1 (1987).

### III.

■ We turn now to the facts of this case. Wausau settled its medical expenses claim of $7,717 prior to trial. Consequently, in adding up the jury's award, the item of $7,717 for past medical expense is simply ignored. Plaintiff's gross award is $16,940.14, which, reduced 30 percent for plaintiff's fault, leaves plaintiff a net recovery (before attorney fees) of $11,858.10.

In this case defendants' counsel, operating in uncharted waters, did not ask that the subrogated medical expenses be dropped from the lawsuit but said he would move post-trial for a deduction. Consequently, the trial court, after the trial, deeming the settled subrogation claim as nonasserted, applied the collateral source statute. The result is the same as we reach in the preceding paragraph.[5]

■ Plaintiff Fairbanks argues the Wausau settlement should be invalidated because made without prior notice to her. She cites *Easterlin v. State of Minnesota*, 330 N.W.2d 704, 707 (Minn.1982), where we held that the employee's failure to notify the employer-insurer of negotiations for a *Naig* settlement would entitle the compensation carrier to a credit for future benefits payable against the employee's *Naig* recovery. But Wausau's failure to give advance notice of a settlement of its subrogation claim did not prejudice the employee's continued prosecution of her lawsuit, and we see no reason to disturb the settlement.

The defendant tortfeasors took a somewhat convoluted approach in settling with Wausau. Defendants say they took an assignment of Wausau's subrogation rights and, as assignees, then waived those rights. In this case the subrogation claim consisted solely of past medical expenses. It seems incongruous to take an assignment of a claim against one's self that one has already settled. The fact of the matter is that defendants simply settled a claim against themselves outright. Supposedly defendants took this circuitous route to make sure that the compensation carrier could not later contend a right to use the employee's tort recovery as a credit against possible future compensation payable. Because we here hold the compensation carrier waives any such right by settling, there was no need for any "assignment and waiver" maneuver by the defendants.

If in this case Wausau had been paying continuing compensation benefits, the settlement dynamics would have been different. The carrier's right under the subdivision 6 formula to a credit against future compensation to be paid might be quite valuable to the carrier, and Wausau might not have wanted to waive these rights by settling for only $3,000.[6] But that is a different case.[7] With respect to settlement of future benefits, the collateral source statute, of course, is not involved because

---

5. The trial court first totaled the jury verdict, arriving at a total of $24,657.14, including the medical expense award of $9,657.14. The total of $24,657.14 was then reduced to $17,260 to account for plaintiff's 30 percent fault. Next the trial court deducted $6,760 ($9,657.14 less 30 percent fault) from $17,260 to arrive at judgment for plaintiff in the amount of $10,500.

The trouble with these calculations is that the trial court, in making the first 30 percent discount for plaintiff's fault, had thereby reduced the nonsubrogated medical expenses of $1,940.14 ($9,657.14–$7,717) to $1,358.10. But in making its second deduction it again deducted $1,358.10 from plaintiff's judgment. There should have been only one deduction for plaintiff's 30 percent fault. If the second deduction of $1,358.10 is added back into plaintiff's recovery, her judgment is not $10,500 but $11,858.10 —the same figure this court reaches.

It would have been to the employee's advantage to have had Wausau pay or acknowledge liability to pay her the additional $1,940.14 in medical expenses. The record does not show why the additional $1,940.14 was not Wausau's responsibility to the employee; however, the trial court found without objection that Wausau's subrogation claim was $7,717.

6. *Compare Haase v. Haase*, 369 N.W.2d 311 (Minn.App.1985) (where the employer-insurer pursued to verdict its subrogation claim for future benefits payable after the employee had settled with the tortfeasor on a *Naig* release).

7. Another scenario is illustrated by *Keenan v. Hydra–Mac, Inc.*, 434 N.W.2d 463 (Minn.1989), where a *Lambertson* contribution claim had been asserted against the employer. The employer chose to waive its subrogation claim, including the credit against future benefits payable, in return for the defendant-tortfeasor's waiver of its contribution claim.

it is limited to payments made "up to the date of the verdict." § 548.36, subd. 1.

Reversed and remanded to the trial court for further proceedings in accordance with this opinion.

YETKA, Justice (concurring specially).

Although I concur in the result, the majority opinion fails to address some issues that may arise when the employer and the third-party tortfeasor reach a settlement just before trial. If the entire amount of workers' compensation paid is removed from the injured employee's claim, the plaintiff may be penalized in several ways.

First, the plaintiff may not meet the threshold requirements to bring a lawsuit. *See* Minn.Stat. § 65B.51, subd. 3 (1990). If the plaintiff is able to go to trial, the jury might wonder why she has not submitted medical expenses when it is apparent that she has been injured. The court would have to explain to the jury why medical expenses are not included. These explanations would further complicate an already complex system and add to jury confusion.

Finally, plaintiff's attorney fees would be subject to dramatic reduction when the employer and the third party reach an eleventh-hour settlement. Lawyers would be discouraged from taking cases in which the chances of recovery against the tortfeasor in excess of workers' compensation are not great. Consequently, many injured employees with tort claims would go unrepresented. The system would create a bonanza for insurance companies at the expense of injured workers.

Allocation of attorney fees pursuant to Minn.Stat. § 176.061, subd. 6 (1990) is premised on the notion that, once trial commences, the plaintiff's attorney has prepared for recovery of the entire sum the tortfeasor owes, and so all parties should pay their share of costs and attorney fees. The same logic applies when the employer and the tortfeasor settle just before trial. The plaintiff's attorney has prepared and has earned fees for the entire claim, including workers' compensation benefits. The majority's bright-line test imposes an arbitrary deadline: 1 hour before a settlement, the plaintiff's attorney is entitled to a percentage of the entire claim; 1 hour later, he is not.