John H. KRUTSCH, et al., Respondents,

v.

WALTER H. COLLIN GmBh VERFAH-RENSTECHNIK UND MASCHINEN-FABRIC, an alien corporation, Defendant and Third–Party Plaintiff, Appellant,

v.

FEDERAL–HOFFMAN, INC., d/b/a
Federal Cartridge Company,
Third–Party Defendant.

Nos. CX–92–786, C3–92–1472, C7–92–2141.

Court of Appeals of Minnesota.

Jan. 26, 1993.

Review Denied March 22, 1993.

Gerald C. Magee, Theodore K. Abe, James Jay Rennicke, Minneapolis, for respondents.

James M. Mahoney, Victor E. Lund, Mahoney, Dougherty and Mahoney, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Respondent was injured while attempting to repair a machine manufactured by appellant. Respondent sued appellant, alleging defective design and failure to warn. The jury apportioned negligence as follows: 16.67% to respondent; 16.67% to appellant; and 66.67% to respondent's employer. Appellant claims the trial court erred (1) in denying its motion for judgment notwithstanding the verdict or, in the alternative, new trial; (2) in not striking the jury's award for future medical expenses; (3) in not applying the collateral source statute; and (4) in denying appellant's motion to limit prejudgment interest. Respondent seeks review of the trial court's denial of additur. We affirm in part, reverse in part, and remand.

## FACTS

In 1982 Federal–Hoffman, Incorporated ("Federal–Hoffman") purchased a lead extruder machine ("machine") from appellant Walter H. Collin GmBh Verfahrenstechnik Und Maschinenfabric ("Collin"), a German corporation. The machine is a large hydraulic press used to make lead bullets.

Respondent John H. Krutsch, an employee of Federal–Hoffman, was operating the machine when it broke down. Federal–Hoffman had trained Krutsch in the operation of the machine, but had not trained him to repair the machine. Krutsch discussed the machine's disrepair with fellow employees, and opined that the machine was not functioning because there was air in its hydraulic cylinder and that he could fix the machine by "bleeding" the cylinder.

Krutsch consulted a partial copy of the machine's operation manual that Federal–Hoffman kept near the machine. Collin had provided Federal–Hoffman with a complete manual which included the procedure for "bleeding" the machine's hydraulic cylinder, but Federal–Hoffman kept the complete manual in its engineering office. The partial copy of the manual did not contain any information on "bleeding" the cylinder. Nevertheless, Krutsch attempted to repair the machine. He took a wrench and began to turn a pressure release bolt attached to the machine's hydraulic cylinder. The bolt contained a small hole through which fluid could flow from the cylinder. Krutsch turned the bolt too far, and highly pressurized hydraulic fluid was injected into his thumb causing severe injuries.

Krutsch sued Collin under negligence and strict liability theories. Collin asserted a contribution claim against Federal–Hoffman. Prior to the selection of a jury, Collin informed Krutsch and the trial court that it had settled its contribution claim with Federal–Hoffman, but did not provide Krutsch or the trial court with a signed copy of the settlement agreement until after the trial had begun. Federal–Hoffman did not participate in the trial.

The jury found that the machine was not defectively designed, but was defective for failure to warn and that Krutsch, Collin, and Federal–Hoffman contributed to Krutsch's injuries. The jury awarded Krutsch damages for past pain, disability, disfigurement, and emotional distress; past medical expenses; past lost earnings; future pain, disfigurement, and emotional distress; future disability; future lost earnings; and future medical expenses. The jury also awarded Krutsch's wife damages for loss of consortium. Upon Collin's motion, the trial court reduced the jury's award for future medical expenses.

## ISSUES

1. Did the trial court err in denying Collin's motion for judgment notwithstanding the verdict?

2. Did the trial court err in denying Collin's motion for a new trial?

3. Did the trial court err in not striking the jury's award for future medical expenses?

4. Did the trial court err in denying Collin's motion for a determination of collateral sources?

5. Did the trial court err in denying Collin's motion to limit prejudgment interest?

6. Did the trial court err in denying Krutsch's motion for additur?

## ANALYSIS

### I.

Collin claims that the trial court erred in denying its motion for judgment notwithstanding the verdict ("JNOV"). We disagree.

██ The decision whether to grant JNOV is a pure question of law, and this court will review the trial court's decision de novo. *McKay's Family Dodge v. Hardrives, Inc.*, 480 N.W.2d 141, 144 (Minn. App.1992), *pet. for rev. denied* (Minn. Mar. 26, 1992).

[JNOV] "may be granted only when the evidence is so overwhelmingly on one side that reasonable minds cannot differ as to the proper outcome." In applying this standard, (1) all the evidence, includ-

ing that favoring the verdict, must be taken into account, (2) the evidence is to be viewed in the light most favorable to the verdict, and (3) the court may not weigh the evidence or judge the credibility of the witnesses.

*Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983) (quoting 4 Douglas D. McFarland & William J. Keppel, *Minnesota Civil Practice* § 2402 (1979 & Supp.1982)) (other citations omitted), *quoted in McKay's Family Dodge,* 480 N.W.2d at 145.

■■■ Collin claims that it is entitled to JNOV because it had no duty to warn of the dangers associated with "bleeding" the cylinder. The question of whether a product manufacturer has a duty to warn of a particular danger is a question of law. *Westbrock v. Marshalltown Mfg. Co.,* 473 N.W.2d 352, 358 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 13, 1991).

■■ "[A] manufacturer's duty to warn in strict liability cases extends to all reasonably foreseeable users." *Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn. 1984). However, "a manufacturer has no duty to warn when the dangers of a product are within the professional knowledge of the user." *Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 687 (8th Cir. 1981), *quoted in Dahlbeck v. DICO Co.,* 355 N.W.2d 157, 163 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985).

Collin should have foreseen that the machine would be operated by individuals who were not fully trained in the machine's maintenance and repair procedures. The dangers associated with "bleeding" the cylinder are not obvious to such a user. Thus, Collin had a duty to warn all foreseeable users of the machine of the dangers associated with "bleeding" the machine's cylinder.

■■ Having concluded that Collin had a duty to warn, "questions of a warning's adequacy, breach and causation are usually jury questions." *Westbrock,* 473 N.W.2d at 358. Collin claims that even if it did have a duty to warn, it satisfied that duty by providing Federal–Hoffman with a manual which included the correct procedures for "bleeding" the cylinder. Collin claims that Krutsch cannot challenge the adequacy of its warning because he never read the instructions contained in the complete manual. We disagree.

Collin's reliance on *Johnson v. Niagara Mach. & Tool Works,* 666 F.2d 1223 (8th Cir.1981) is misplaced. In *Johnson,* the eighth circuit upheld the district court's directed verdict against an injured press operator who admitted to never having read the warning label attached to the press. *Id.* at 1225. The court explained that "an issue as to the adequacy of a warning necessarily presupposes that the operator had read the warning." *Id.* However, the court noted that "the present case does not involve an inadequate warning, or no warning at all." *Id.* at 1226 n. 3 (citations omitted). Here, Krutsch claims that Collin breached its duty to warn by failing to place warning labels on the machine itself. This question was properly for the jury to decide. *Westbrock,* 473 N.W.2d at 358.

Viewing the evidence in a light most favorable to the verdict, the evidence is not so overwhelmingly on one side that reasonable minds cannot differ as to the proper outcome. *See Lamb,* 333 N.W.2d at 855. Accordingly, the trial court did not err in denying Collin's motion for JNOV.

## II.

■ Collin claims that the trial court erred in denying its motion for new trial. Again, we disagree. The decision to deny a motion for new trial rests solely in the discretion of the trial court, and we will not reverse that decision absent an abuse of discretion. *McKay's Family Dodge,* 480 N.W.2d at 146.

■ Collin asserts that it is entitled to a new trial because the jury verdict was not in accordance with law. By special verdict, the jury found both Collin and Krutsch 16.67% liable and Federal–Hoffman 66.67% liable for Krutsch's injuries. Thus, the jury attributed a total of 100.01% liability to the parties.

■ "An obvious arithmetical error made by a jury in computing the amount due plaintiff must be corrected by the trial court." *Ramfjord v. Sullivan*, 301 Minn. 238, 251, 222 N.W.2d 541, 549 (1974). A clerical mistake is a decision which cannot reasonably be attributed to the exercise of discretion. *In re Appeal from Lake Alice Sewer Assessment*, 181 Minn. 329, 332, 232 N.W. 322, 323 (1930). "Such a mistake ordinarily is apparent upon the face of the record and capable of being corrected by reference to the record only." *Id.*

Here, the jury's attribution of 100.01% fault cannot reasonably be attributed to its exercise of discretion. Rather, it is clear from the record that the jury rounded up a hundredth of a percentage point each of the percentages of fault, 16.666 for both Krutsch and Collin, and 66.666 for Federal–Hoffman, thus accounting for the .01 overstatement. The only reasonable conclusion which can be drawn is that the jury, in arriving at 16.67% for both Krutsch and Collin, intended to find each of these two parties one-sixth causally negligent.[1] The trial court did not err in denying Collin's motion for new trial on this basis.

■ Collin also claims that it is entitled to a new trial because the trial court communicated with the jury, after its deliberations, and outside of the presence of counsel or a court reporter. The Minnesota Supreme Court has:

consistently held it is error to instruct a jury, or refuse to accept a jury's findings, and order them to retire for further deliberation in the absence of both counsel and a court reporter.

*Ramfjord*, 301 Minn. at 251, 222 N.W.2d at 549.

Here, the trial court neither instructed the jury off the record nor refused the jury's findings. Instead, the trial court spoke to the jury after the verdict was returned, and the jury "expressed the intent to find [Krutsch] and [Collin] to be equally negligent." While it would have been better practice to have this discussion in the presence of counsel and a court reporter, it was not error under *Ramfjord*. Further, even if the trial court did err, such error was not prejudicial. The discussion took place after the jury made its decisions and thus could not have influenced the jury's verdict.

### III.

■ Collin claims that the trial court erred in not striking the jury's award for future medical expenses. We disagree.

■ There are two requirements for the award of future medical expenses: (1) plaintiff must show that future medical treatments will be required; (2) plaintiff must establish the amount of the damages through expert testimony. *Lind v. Slowinski*, 450 N.W.2d 353, 358 (Minn.App. 1990), *pet. for rev. denied* (Minn. Feb. 21, 1990). Here, both Krutsch and Dr. Charles Ray testified that Krutsch's condition is permanent and will require continual medical treatment throughout his life. Thus, the first requirement of *Lind* was met.

The expert testimony presented at trial was insufficient to meet the second requirement of *Lind*. While Dr. Ray did testify that Krutsch's morphine pump, through which he self-administers pain relief, must be refilled every 45 days, he did not testify as to the cost of refilling the pump. There is evidence, however, that the parties stipulated to allow Krutsch's attorney to present evidence of future medical expenses to the jury during closing

---

1. Minn.Stat. § 604.01, subd. 1 (1990):
   Contributory fault does not bar recovery in an action by any person * * * if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed must be diminished in proportion to the amount of fault attributable to the person recovering.
   Minn.R.Civ.P. 49.01(b) provides in relevant part that:

In actions involving Minn.Stat. ch. 604 the court shall inform the jury of the effect of its answers to the comparative fault question and shall permit counsel to comment thereon.
A finding that Krutsch and Collin were equally at fault permits recovery by Krutsch against Collin; a finding that Krutsch was .01% more at fault than Collin would preclude such recovery.

arguments. After a discussion off the record, the trial court instructed the jury:

I believe counsel is going to be stipulating to the medical bills and we will get those in the exhibits when you go into the jury room.

In his closing argument Krutsch's attorney stated:

We have agreed * * * that the future medical involves the cost of the morphine pump. And ladies and gentlemen, I've taken the time to have this written out for you. Future medical of 1.5 milligrams of morphine a day, morphine pump filling every 40 days, so about every—and that's—the morphine costs $120. The hospital staff is $27.00 for the lady to do it, so that's $147 every 40 days. $1,396, so $1,400 every year. The judge is going to tell you that Mr. Krutsch has a life expectancy of 34 years, and that is going to put his future medical at $47,481. Now that's just for the morphine.

Significantly, Collin's attorney made no objection to this argument.

Although Collin did not address the stipulation in either its main or reply briefs, at oral argument it denied that the parties stipulated. We conclude that the parties did agree to allow Krutsch's attorney to offer evidence of future medical expenses, and the record, therefore, supports the jury's award for future medical expenses.

## IV.

■ Collin claims that the trial court erred in refusing to determine collateral sources. This issue involves the application of two statutes to essentially undisputed facts; thus, this court need not give deference to the trial court's decision. *Keenan v. Hydra–Mac, Inc.*, 434 N.W.2d 463, 465 (Minn.1989).

After the trial court's order for judgment, Collin moved for application of the collateral source statute. Minn.Stat. § 548.36 (1990). This statute provides that if damages awarded include an award to compensate the plaintiff for losses available to the date of verdict by a collateral source, upon a party's motion, "the court .

shall determine: (1) amounts of collateral sources that have been paid for the benefit of the plaintiff * * * as a result of losses *except those for which a subrogation right has been asserted.*" Minn.Stat. § 548.36, subd. 2 (1990) (emphasis added).

Normally, when an employer and its insurer have paid worker's compensation to the injured employee, the employer is subrogated to the right of the employee to recover from the third-party tortfeasors.

*Keenan*, 434 N.W.2d at 465.

■ Where the employer's rights are subrogated, Minn.Stat. § 548.36 has no application. Instead, the statutory formula set forth in Minn.Stat. § 176.061, subd. 6 (1990) governs the apportionment of the award. *Keenan*, 434 N.W.2d at 465. However, in *Folstad v. Eder*, 467 N.W.2d 608, 613 (Minn.1991), the Minnesota Supreme Court held that the statutory formula in Minn.Stat. § 176.061 "does not apply if the compensation carrier settles any time prior to the commencement of trial."

The *Folstad* court explained that it would be unfair to allow the employer to take advantage of an employee's successful prosecution of a case without sharing in the costs of prosecution. *Id.* at 612. However, this "rationale has much less force when the employer-insurer settles its subrogation claim prior to trial." *Id.* The court noted that when the employer's subrogation claim is settled prior to trial, the employee is saved the substantial burden of prosecuting his employer's subrogation claim. *Id.* Consequently, "[plaintiff's] attorney does not have the same right to expect remuneration from the compensation carrier as from the plaintiff." *Id.* at 613.

■ Here, Collin, Federal–Hoffman, and Federal–Hoffman's compensation carrier entered into a settlement agreement in which Federal–Hoffman and its insurer assigned all of their subrogation rights to Collin. In return, Collin released Federal–Hoffman from all claims arising from Krutsch's injury. The primary question is: *when* did the parties enter into the settle-

ment agreement? If the parties settled after trial commenced, the section 176.061 formula applies; if the parties settled prior to trial, the collateral source statute applies.

The agreement was announced to the trial court and to Krutsch's attorney on October 16, 1991, before trial began. The agreement stated that it was "entered into between the parties on October 14, 1991, with formal execution to be completed at a later time." The agreement was signed by Collin's president on December 20, 1991, after the trial had begun.

Prior to trial, Krutsch was notified that he would not be representing Federal-Hoffman's subrogation interests in this suit. Krutsch's attorney knew that he did not have the right to expect remuneration from Federal-Hoffman through application of the section 176.061 statutory formula. All parties knew prior to trial that Federal-Hoffman would not benefit from Krutsch's successful prosecution of his claim. Federal-Hoffman did not appear at trial.

We conclude that the policies supporting the application of the section 176.061 formula do not apply here. *See Folstad,* 467 N.W.2d at 612–13. Accordingly, for the limited purposes of determining whether the collateral source rule applies, the settlement offer became effective prior to trial, when the parties to the agreement notified the trial court and Krutsch of the agreement.

█ If the jury's damage award includes an award to compensate Krutsch for losses which had been paid to the date of the verdict by Federal-Hoffman or Federal-Hoffman's worker's compensation carrier, then the trial court must determine the "amounts of collateral sources that have been paid for" Krutsch's benefit and "the amounts that have been paid, contributed or forfeited by * * * the plaintiff * * * to secure the right to a collateral source benefit." Minn.Stat. § 548.36, subd. 2.

We note the presence of qualifying language in *Folstad:*

[o]rdinarily, there is no need to continue to assert in plaintiff's action a subrogation claim that has been settled and is

now out of the lawsuit. There is no need to deduct what is no longer there to be deducted.

*Folstad,* 467 N.W.2d at 613. Thus, if the subrogated damages have been separated out of Krutsch's action, there is no need to apply the collateral source rule. *See id.* We, therefore, remand the collateral source issue to enable the trial court to determine, pursuant to the *Folstad* rationale, whether there are damages included in the special verdict which are subject to the collateral source rule.

## V.

█ Collin claims that the trial court erred in denying its motion to limit prejudgment interest. We agree.

This issue involves the application of a statute to essentially undisputed facts; thus, this court may review the trial court's decision de novo. *Keenan,* 434 N.W.2d at 465.

Under Minn.Stat. § 549.09, subd. 1(b) (1990), preverdict interest is generally calculated from the time of the commencement of the action. *See Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 839 (Minn.1988), *cert. denied* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). "One of the exceptions is the offer-counter-offer provision." *Id.* Under this provision, if the losing party makes a settlement offer which is:

closer to the judgment than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment, whichever is less, and only from the time the action was commenced or a written settlement demand was made * * * until the time the settlement offer was made.

Minn.Stat. § 549.09, subd. 1(b).

Here Krutsch offered to settle the case with Collin for $1,000,000. On May 17, 1991, Collin offered to settle the case for $100,000. Collin's settlement offer was closer to the judgment than Krutsch's settlement offer. Therefore, Krutsch is entitled to receive interest only on the amount of Collin's settlement offer, and only from

the time the action was commenced or a written settlement demand made until the date of Collin's settlement offer.

Krutsch claims that Collin's settlement offer was invalid because it was exclusive of Federal–Hoffman's interests.

> [I]n an employee's third-party tort action, for the purposes of the offer-counteroffer provision of the prejudgment interest statute, any offer must treat the employee and the employer as one party, and any settlement offer, to be valid, must encompass the interests of both the employee and the employer.

*Hodder*, 426 N.W.2d at 840–41.

Here, Collin's offer treats Krutsch and his employer Federal–Hoffman as one party. The offer does not mention Federal–Hoffman or Krutsch; rather, the offer simply states that Collin offers "to allow judgment to be entered against him for the sum of $100,000." We conclude that Collin's settlement offer is valid for the purposes of Minn.Stat. § 549.09, subd. 1(b).

### VI.

 Krutsch claims that the trial court erred in denying his motion for additur. We disagree.

"[W]hether to grant additur rests almost wholly within the trial court's discretion." *Pulkrabek v. Johnson*, 418 N.W.2d 514, 516 (Minn.App.1988), *pet. for rev. denied* (Minn. May 4, 1988). A trial court may not grant additur unless the verdict is unreasonable. *Id.*

The record supports the trial court's denial of additur. The jury was presented with conflicting medical evidence concerning the severity of Krutsch's injuries. Given this testimony, the jury's findings as to the amount of Krutsch's injuries are not unreasonable. Therefore, the trial court did not abuse its discretion in denying Krutsch's motion for additur. *See id.*

### DECISION

The trial court did not err in denying Collin's motion for JNOV or new trial, and its motion to strike the jury's award of future medical expenses. Further, the trial court did not err in denying Krutsch's motion for additur. However, the trial court did err in refusing to determine collateral sources and in refusing to reduce the amount of prejudgment interest according to Minn.Stat. § 549.09, subd. 1(b).

Affirmed in part, reversed in part, and remanded.