Raymond BUSHONG and Betty Bushong *v.* The GARMAN COMPANY and The Clorox Company Continental Casualty Co., Intervenor

92-436 843 S.W.2d 807

Supreme Court of Arkansas
Opinion delivered December 7, 1992

*Murrey L. Grider* and *Ponder & Jarboe*, by: *Dick Jarboe*, for appellants.

*Barrett, Wheatley, Smith & Deacon*, by: *John V. Phelps*, for appellee Clorox Co.

*Mixon & McCauley*, by: *Don Mixon*, for appellee Garman Co.

*Snellgrove, Laser, Langley, & Lovett*, for intervenors.

DONALD L. CORBIN, Justice. On May 12, 1988, appellant, Raymond Bushong, was cleaning a bathroom on the premises of Stewart Electric, his employer, in Jonesboro, Arkansas. Appellant was trying to remove grease from the bathroom floor and had used almost an entire gallon of undiluted Clorox without success when a co-employee, Greg Rollins, suggested he try using Vapco Brite' Alum, an air conditioner coil cleaner. Greg Rollins poured approximately one-half (1/2) a cup of the Vapco Brite' Alum on the floor directly on top of the Clorox Bleach which was already there. Vapco Brite' Alum is a product sold to refrigeration and air conditioning wholesalers to clean condenser coils and refrigeration and air conditioning units. It is intended for use by professional refrigeration and air conditioning service personnel. Neither appellant nor Greg Rollins are professional refrigeration or air conditioning service personnel, although their employer, Stewart Electric, employed such people. Neither appellant nor Greg Rollins read the labels of either the Clorox Bleach or the Vapco Brite' Alum. Appellant had never read the labels of any of the products he used in cleaning. At the time of the accident, appellant was a warehouseman who also did some cleaning for Stewart Electric and Greg Rollins was an estimator for Stewart Electric. Neither appellant nor Greg Rollins had ever used Vapco Brite' Alum before, but both were aware it was used in cleaning air conditioners. After the Vapco Brite' Alum was poured onto the floor, appellant continued to clean the floor in the bathroom, which was approximately four (4) feet by four (4) feet. Soon after, the mixture started to foam and a white fog vapor was coming up from the floor which appellant inhaled. Appellant claims the inhalation of these vapors caused him personal injury.

Appellant filed a complaint on April 5, 1990, against The Clorox Company, the manufacturer of Clorox Bleach, The

Garman Company, the manufacturer of Vapco Brite' Alum, and Greg Rollins. As to the Clorox Company and The Garman Company, appellant alleged they:

> negligently and carelessly designed, mixed, manufactured, marketed, packaged and inspected [the irrespective products] and the same combined to create a gaseous toxic cloud with the result that part of the cloud of gas was inhaled by [appellant] causing him great damages and injuries . . . .

> . . . expressly and impliedly warranted that [their respective products] were fit for the purpose for which they were intended. . . .

> . . . are absolutely or strictly liable in that they manufactured and marketed [their respective products] and failed to issue proper and necessary warnings when [they] knew or should have known that the combination of the gases created a defective condition that was unreasonably dangerous in that it could cause a toxic gas and injure a person who would in the ordinary course of his affairs be near or around the gas.

Appellant alleged Greg Rollins

> was negligent in that he failed to use that degree of care exercised by ordinary and prudent persons under the same or similar circumstances and further, he knew or ought to have known by the exercise of ordinary care that the mixing of the aforementioned two chemicals would cause a cloud of fumes which would be harmful to Plaintiff.

Continental Casualty Company, appellant's employer's insurance carrier at the time of the accident, moved to intervene pursuant to Ark. R. Civ. P. 24 and Ark. Code Ann. § 11-9-410 (1987) of the Arkansas Workers' Compensation Act. The order allowing the intervention was filed on July 25, 1990.

On October 9, 1991, appellee Clorox Company moved for summary judgment. On October 22, 1991, appellant filed an amended complaint re-alleging the same causes of action, but expanding the absolute or strict liability claim to allege:

> [t]he defendants, Garman and Clorox, are absolutely

or strictly liable in that they manufactured and marketed the products herein and failed to issue proper and necessary warnings when the said Defendants knew or should have known the combination of the gases created a defective condition that was unreasonably dangerous in that it could cause a toxic gas and injure a person who would in the ordinary course of his affairs be near or around the gas. The Defendants are also strictly liable in tort inasmuch as both produced a defective product. The Clorox product was defective in the fact that it contained sodium hypochlorite the brite alum was defective in that it contained hydrofluoric acid. Either chemical in combination with other chemicals could release a poisonous gas and were dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge, and to the community as to its characteristics. Both products would fail to perform as safely as an ordinary consumer would expect them to perform when used in an an intended or reasonably foreseeable manner. Further the benefits of the products do not outweigh the risks of danger inherent in their design.

On November 12, 1991, appellee Garman Company also moved for summary judgment.

On November 19, 1991, the trial court found "the warnings on the labels for Clorox and Brite' Alum, the respective products of Clorox Company and Garman Company, are adequate under the facts of this case and that Raymond Bushong and Greg Rollins failed to read the labels" and for that reason granted partial summary judgment in favor of Clorox Company and Garman Company on all allegations of failure to warn and improper labeling. Summary judgment was also granted on the breach of warranty issues upon appellant's admission that they did not have a case for breach of express or implied warranties. On December 3, 1991, Clorox Company, filed a supplemental motion for summary judgment on the product defect and negligent manufacture issues. On January 8, 1992, the trial court granted the supplemental motion for summary judgment and found "all claims of plaintiffs and intervenor and all cross-claims of Greg Rollins against The Garman Company and The Clorox Company should be dismissed with prejudice." Appellant's and

intervenor's, Continental Casualty Company's, claim against Greg Rollins was dismissed without prejudice pursuant to plaintiff's oral motion in open court for a voluntary nonsuit against Greg Rollins. This appeal followed. Since this case presents questions in the law of torts, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 29(1)(o).

On appeal, appellant cites four points of error in the trial court's granting of summary judgment to appellees The Clorox Company and The Garman Company. They are (1) the warning on the labels for Clorox and Brite' Alum are not adequate as a matter of law; (2) the failure of appellant and Greg Rollins to read the labels is not dispositive of the adequacy of the warnings; (3) there are material issues of fact to be determined in this cause; and (4) the trial court erred in refusing to require separate appellee, The Garman Company, to produce a copy of the M.S.D.S. (Material Safety Data Sheet) on its product, Brite' Alum, before ruling on the motion for summary judgment.

## I. ADEQUACY OF THE WARNINGS

■ For his first point of error, appellant alleges the trial court erred in finding the warnings on the labels for Clorox and Brite' Alum were adequate as a matter of law under the facts of this case. We need not reach this issue since we uphold the trial court's granting of summary judgment on the failure to warn and improper labeling issues based on appellant's failure to read the labels. We do note, however, that adequacy of a warning is generally a question of fact for the jury. *See First Nat'l Bk., Albuquerque* v. *Nor-Am Agric. Prod., Inc.*, 537 P.2d 682 (N.M. Ct. App. 1975) (and cases cited therein), *cert. denied; Uptain* v. *Huntington Lab, Inc.*, 685 P.2d 218 (Colo. Ct. App. 1984), *aff'd en banc* 723 P.2d 1322 (Colo. 1986).

## II. FAILURE TO READ WARNINGS

For his second point of error, appellant alleges the failure of appellant and Greg Rollins to read the labels is not dispositive of the adequacy of the warnings and it was error for the trial court to grant summary judgment on this basis. We have not previously addressed this issue.

■■ The parties have cited cases from various jurisdic-

tions which hold both that failure to read the label precludes a claim of inadequate warning and that it does not. We think the better rule is that failure to read the label does not automatically preclude a claim for inadequate warning. We find the rule applied in *Safeco Ins. Co.* v. *Baker*, 515 So. 2d 655 (La. Ct. App. 1987) particularly persuasive and we adopt the reasoning therein. *Safeco* holds the plaintiff originally has the burden of proving the warnings or instructions provided were inadequate. Once a plaintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions. This presumption may be rebutted by evidence "which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." *Safeco Ins. Co.*, 515 So. 2d 655, 657 (La. Ct. App. 1987); *See also Johnson* v. *Niagara*, 666 F.2d 1223 (8th Cir. 1981). In this case, appellant himself admitted that he had never read a label on a cleaning product during the three years he worked at Stewart Electric. Given this, we cannot say the trial court erred in finding appellant's failure to read the label precluded his claim as any warning or instruction would have been futile since appellant would not have read it.

## III. NEGLIGENCE AND DEFECTIVE PRODUCT CLAIMS

Appellant's third point of error alleges it was error for the trial court to grant summary judgment on Counts V and VI, the negligent manufacture and the defective product claims. Appellant contends there were material issues of fact to be decided as to these claims and it was, therefore, improper for the trial court to grant summary judgment on these claims. In addressing this issue, there are two sub-issues which must be addressed: (1) was summary judgment proper as to the negligence claims; (2) were there material issues of fact to be decided as to the defective product claims against Clorox or Garman.

The negligent manufacture claims alleged

Garman and Clorox, by and through their agents and employees negligently and carelessly designed, mixed, manufactured, marketed, packaged and inspected [their respective products] and the same combined to create a gaseous toxic cloud with the result that part of the cloud of

gas was inhaled by the Plaintiff, Raymond Bushong causing him great damages and injuries as set out hereinafter.

The trial court dismissed this claim on summary judgment stating "all claims of plaintiffs and intervenor and all cross-claims of Greg Rollins against The Garman Company and The Clorox Company should be dismissed with prejudice."

 As we said in *West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991), "We sustain a trial court's ruling if it reached the right result, even though it announced the wrong reason." Summary judgment was proper, but dismissal of the claim with prejudice was not. Summary judgment should have been granted because this allegation is insufficient under Arkansas law. Arkansas is a fact pleading state and appellant's negligence claim does not state facts upon which relief can be granted. *Harvey* v. *Eastman Kodak Co.*, 271 Ark. 783, 610 S.W.2d 582 (1981). Appellant's complaint does not allege any facts which tend to prove appellees Clorox and Garman "negligently and carelessly designed, mixed, manufactured, marketed, packaged and inspected their products." As we explained in *Searle*, summary judgment based upon failure to state a claim upon which relief can be granted is different from summary judgment based upon a lack of disputed material facts, which is the failure to have a claim. *West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608. When summary judgment is granted because of failure to state a claim, the dismissal should be without prejudice in order to afford the plaintiff-appellant a chance to plead further. *Id.* Therefore, the summary judgment for The Garman Company and The Clorox Company on the negligence issue is modified to be without prejudice.

The next sub-issue which must be addressed is whether there was any material issue of fact regarding whether Clorox or Brite' Alum was defective. Appellant alleged Clorox was defective because it contained sodium hypochlorite which, "in combination with other chemicals could release a poisonous gas and [was] dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge, and to the community as to its characteristics" and "would fail to perform as safely as an ordinary consumer would

expect [it] to perform when used in an intended or reasonably foreseeable manner [such that] the benefits of the product[] do not outweigh the risks of danger inherent in [its] design." Appellant alleged Brite' Alum was defective because it contained hydrofluoric acid, which "in combination with other chemicals could release a poisonous gas and [was] dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge, and to the community as to its characteristics" and "would fail to perform as safely as an ordinary consumer would expect [it] to perform when used in an intended or reasonably foreseeable manner [such that] the benefits of the product[] do not outweigh the risks of danger inherent in [its] design."

■ In order to prevail in a products liability claim, appellant must prove

(1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;

(2) The product was supplied by him in a defective condition which rendered it unreasonably dangerous; and

(3) The defective condition was a proximate cause of the harm to person or to property.

Ark. Code Ann. § 4-86-102(a) (1987). " 'Defective condition' means a condition of a product that renders it unsafe for reasonable foreseeable use and consumption." Ark. Code Ann. § 16-116-102(4) (1987).

"Unreasonably Dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product, assuming the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess.

Ark. Code Ann. § 16-116-102(7) (1987).

■ Summary judgment is an extreme remedy which is only

proper when it is clear there are no issues of fact to be litigated. *Pinkston* v. *Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988). "Once the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact." *Anderson* v. *First Nat'l Bank*, 304 Ark. 164, 166, 801 S.W.2d 273, 274 (1990). An affidavit stating only conclusions is not sufficient. *Miskimins* v. *The City Nat'l Bank*, 248 Ark. 1195, 456 S.W.2d 673 (1970). "The response and supporting material must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 1205, 456 S.W.2d at 679.

In its motion for summary judgment and supplemental motion for summary judgment, The Clorox Company supplied the affidavits and depositions of several witnesses. None of these supporting materials contained any proof that Clorox was supplied in a defective condition which rendered it unreasonably dangerous. The Garman Company supplied interrogatories and depositions in support of its motion for summary judgment. None of the supporting material provided by Garman indicated Brite' Alum was supplied in a defective condition which rendered it unreasonably dangerous. In order to prove the existence of a material issue of fact as to the defective condition of Clorox and Brite' Alum, appellant offered the affidavits of Dr. Ronald Wise, a biochemist, and Mrs. Carolyn Wise, stating that:

> On giving my deposition on the 8th day of March, 1991, an inquiry was made as to whether or not the product, Clorox or Brite' Alum, was defective. My answer to that was no if "defective" meant whether or not the products were defectively formulated. In essence I was stating that the product as constituted did not deviate from the norm.

> If defective were to mean that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner then my answer would have been that it was, in fact, defective.

These affidavits are conclusory in nature and do not set forth any specific facts tending to prove either Clorox or Brite' Alum was supplied in a defective condition which rendered it unreasonably dangerous. *Miskimins*, 248 Ark. 1194, 456 S.W.2d 673. Therefore, appellant did not present proof of a material

element of his claim. Summary judgment is proper when an appellant fails to present proof of a material element of his claim. *Irvin* v. *Jones*, 310 Ark. 114, 832 S.W.2d 827 (1992). Thus, we affirm the trial court's granting of summary judgment as to the defective product claims.

## IV. MATERIAL SAFETY DATA SHEET

■ For his fourth point of error, appellant alleges it was error for the trial court to grant summary judgment before requiring appellee, The Garman Company, to produce a copy of the M.S.D.S. (Material Safety Data Sheet) on its product, Brite' Alum. Even if the M.S.D.S. had been supplied, summary judgment was properly granted as to appellant's claim against Garman. In order to withstand a summary judgment motion as to the defective product claims, appellant was required to produce proof that the product was supplied in a defective condition which rendered it unreasonably dangerous. Appellant claims he needed the M.S.D.S. to prove that Brite' Alum was supplied in a defective condition. However, since appellant failed to supply proof sufficient to prove Brite' Alum was unreasonably dangerous, Garman's summary judgment motion was properly granted. Proof that Brite' Alum was supplied in a defective condition would not cure appellant's failure to supply proof Brite' Alum was unreasonably dangerous. Appellant did not supply any proof of the

> ordinary knowledge of the community or of similar buyers, users, or consumers as to [the] characteristics, propensities, risks, dangers, and proper or improper uses, [or] any special knowledge, training or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess.

As was noted previously, an affidavit stating only conclusions, but failing to set forth specific facts is insufficient to show there is a material issue of fact. *Miskimins*, 248 Ark. 1194, 456 S.W.2d 673. Since appellant failed to prove this element of his proof, he could not withstand a summary judgment motion even had the M.S.D.S. revealed chemical elements which would have allowed appellant's expert to determine the product was supplied in a defective condition.

Affirmed in part; modified in part.

HOLT, C.J., NEWBERN and BROWN, JJ., dissent.

# CLOROX® BLEACH *for a cleaner fresher laundry and household*

## Your laundry needs Clorox bleach:

For the broad range of laundry problems, no other detergent additive can give a cleaner, brighter wash.

**Brightens whites and removes stains**
Clorox bleach works with detergent to remove tough dirt and stains that detergent alone cannot.

**Disinfects and eliminates odors** Clorox bleach disinfects and deodorizes laundry by eliminating most germs and their odors.

**Boosts cold water cleaning power** Most detergents do not clean as well in cold or warm water. Clorox bleach gives your detergent extra cleaning power to remove stains and kill germs in cold water.

**Safe** for most color-fast washables (test bleach fastness and sanitizes colored washables to check if a garment is bleach safe: Try this **Bleach-safe test**: apply one drop of a test solution (1 tablespoon Clorox bleach plus 1/4 cup water) to a hidden part of the fabric. Check for colors matching from 1 let stand 1 minute, then blot dry. No color change means the article can be safely bleached.)

Write for a free Clorox "Guide to Clean" Wonders or other information on laundry in brush cleaning in Clorox, P.O. Box 24305, Oakland, CA 94623

## Hazards to humans and domestic animals

Causes substantial but temporary eye injury. Do not get in eyes or on clothing. Harmful if swallowed. May irritate skin.

**WARNING**

**Precautionary Statements**

## Directions for laundry use:

**Pretreat stains and heavy soils** Stubborn stains may be soaked for 5 minutes in a solution of 1/4 cup Clorox bleach in 1 gallon of cool sudsy water.

**Sort laundry** by color and fabric. Separate whites from colors, light colors from dark colors. Avoid bleaching wool, silk, mohair, leather, spandex, non-fast colors, and items marked "no chlorine bleach."

**Add bleach and detergent** Clorox bleach may be added in the wash water before adding laundry. Dilute Clorox bleach in 1 quart of water and add to wash water after 5 minutes. Allow the wash cycle to complete.

**Recommended amount of Clorox bleach** for very large loads and slightly new Clorox bleach

### Regular
Top Loading Automatic .. **1 cup**

### Large Top
Loading Automatic .. **1 1/2 cups**

### Front
Loading Automatic .. **1/2 cup**

### Hand Laundry
(2 gallons sudsy water) **1/8 cup**

**Storage and disposal** Store Clorox bleach in a cool dry place. Do not reuse empty container, rinse container and put in trash collection.

**Practical treatment** If in eyes remove contact lenses, flush with plenty of water for at least 15 minutes. If swallowed drink a glassful of water to dilute, call a physician. If contact with skin, immediately remove contaminated clothing and wash skin thoroughly with water.

© 1987 The Clorox Company, Oakland, CA 94612 Made in USA

## Directions for household use:

**Toilet bowls** (1 cup of Clorox bleach into bowl. Brush. Let stand 10 minutes, flush)

**Bathtubs and showers** (Clean with a solution of 3/4 cup Clorox bleach per gallon of warm sudsy water. Let stand 5 minutes, rinse)

**Kitchen sinks** (Clean with 1/2 cup of Clorox bleach in 1 1/2 cups Clorox bleach. Let stand 5 minutes, rinse)

**Floors, vinyl, tile, woodwork, and appliances** (Clean with a solution of 3/4 cup Clorox bleach per gallon of sudsy water. Let stand 5 minutes, rinse)

0 44600 00104 3

## Physical and chemical hazards

Strong oxidizer. Flush down before and after use. Do not use or mix with other household chemicals, such as toilet bowl cleaners, rust removers, acid or ammonia containing products, as this will release hazardous gases. Prolonged contact with metal may cause pitting or discoloration.

NET CONTENTS _____ GALLONS

# Vapco ®

## Brite' Alum ®

FIN/COIL CLEANER and BRIGHTENER for AIR CONDITIONING and REFRIGERATION SYSTEMS

- RESTORES EFFICIENCY
- REDUCES POWER COSTS
- BRIGHTENS ALUMINUM and COPPER

**DANGER:** MAY BE FATAL IF SWALLOWED OR INHALED. CAUSES SEVERE BURNS WHICH MAY NOT BE IMMEDIATELY PAINFUL OR VISIBLE. VAPOR HARMFUL. Read carefully other cautions on side panel.

KEEP OUT OF REACH OF CHILDREN

FOR SALE TO, USE, AND STORAGE BY SERVICE PERSONS ONLY

Mfd by The GARMAN CO., Fenton, Mo 63026 U S A

## VAPCO BRITE'ALUM

- heavy foaming action penetrates deep into coil to remove and dissolve contamination.
- cleans heat exchange surface of normal dirt and soil.
- removes oxidation build-up and scale incrustations not normally affected by ordinary cleaners.
- restores original heat transfer capabilities.
- metal surfaces are left bright and smooth with a like new appearance.
- many uses besides cleaning heat exchange equipment. Use to clean aluminum air filters, copper pipe and fittings, etc. Makes an excellent all around cleaner and brightener for aluminum and copper surfaces.
- removes rust from ferrous metals...leaves no corrosive residue.
- non-flammable.

### OTHER INDUSTRIAL USES

Although VAPCO BRITE'ALUM was developed specifically for air conditioning and refrigeration systems, its properties suggest many other applications. For example electronic air filters and aluminum truck trailers. Also, to clean aluminum before soldering or welding and as a remover for rust stains on concrete.

## DIRECTIONS

### FOR USE BY QUALIFIED MAINTENANCE AND SERVICE PERSONNEL ONLY.

1. Turn system off.
2. Dilute 1 part BRITE'ALUM with 3 parts water. Do not use undiluted.
3. Spray directly on coil using low pressure sprayer. Vapco Tank Sprayer is recommended.
4. If necessary, repeat spraying to penetrate multi coil unit
5. Rinse thoroughly with water after 3 to 5 minutes

If used on anodized surfaces, dilute 1 part BRITE'ALUM with 5 parts water and rinse immediately. BRITE'ALUM may remove anodizing BRITE'ALUM may etch windows or other class surfaces Protect them during application or rinse immediately in case of contact Concentrate may affect galvanized or painted surfaces Do not transfer contents of bottle to another container for storage. Do not use on cooking utensils.

DANGER: Contains Hydrofluoric Acid. Avoid contact with skin, eyes, or clothing Use only with rubber gloves and protective eye wear. Avoid breathing vapors. Use only with adequate ventilation.

First Aid: Call Physician immediately.

External: Immediately wash skin with soapy water being very careful to clean under fingernails.

Internal: Drink large quantities of water Follow with egg whites or mineral oil Do not induce vomiting.

Eyes: Flush with cool water for at least 15 minutes

### KEEP OUT OF REACH OF CHILDREN

ROBERT L. BROWN, Justice, dissenting. The issue in this case is whether the warning on the Clorox container about hazardous toxic gases was conspicuous enough to draw a user's attention — not whether Bushong actually read the label. If the warning on the label had been sufficiently eye-catching and had sounded some mental alarm, arguably the user would have read it. In any case, that is a question for the jury to decide. It is not a matter of law for the trial court on summary judgment. By holding as the majority does today, no matter how hidden or inconspicuous a notice of danger in the future may be, if the user fails to read a label *in toto*, he is foreclosed from recovery. I disagree that that is the law.

We have not reviewed a summary judgment couched on failure to read a warning until this case. Other jurisdictions, however, have refused to hold that failure to read a warning in and of itself is determinative of the warning's adequacy. *See, e.g., Spruill* v. *Boyle-Midway, Inc.*, 306 F.2d 79 (4th Cir. 1962); *East Penn Manufacturing Co.* v. *Pineda*, 578 A.2d 1113 (D.C. App. 1990); *Jarrell* v. *Monsanto Co.*, 528 N.E.2d 1158 (Ind. App. 2 Dist. 1988); *Shell Oil Co.* v. *Gutierrez*, 119 Ariz. 426, 581 P.2d 271 (1978).

In *East Penn Manufacturing* v. *Pineda, supra*, the issue involved an exploding battery and an injured mechanic who was an experienced user. The jury found for the mechanic, and the manufacturing company moved for judgment n.o.v. on failure-to-read grounds which the trial court denied. On appeal, the District of Columbia Court of Appeals first noted that it had previously rejected the argument that adequacy of a warning label could be resolved as a matter of law. It then went on to discuss the mechanic's failure to read the warning label on the battery, which was the size of a business card:

> In the failure to warn context, it is first necessary to distinguish between (1) failure to take adequate steps to ensure the warning was communicated to the ultimate user — issues involving the prominence and location of the label — and (2) failure to provide a warning that, if communicated to the user, would have been adequate to warn of risks — which involves the content of the warning. When the failure to warn is based upon the steps taken to communicate the warning, the fact that the plaintiff never

read the warning is itself evidence that the label was inadequate, and should not bar recovery. *See Rhodes* v. *Interstate Battery Systems of Am.*, 722 F.2d 1517, 1519 (11th Cir. 1984). But when the cause of action is predicated on the content of the warning, as in this case, the plaintiff's own failure to read it will be contributory negligence in some jurisdictions. *Id.*

578 A.2d at 1124. Concluding that failure to read the label was ot itself fatal, the court affirmed the jury's verdict on failure to warn.

In *Shell Oil Co.* v. *Guiterrez, supra*, a supposedly empty metal drum which had contained liquid xylene exploded because of welding work done within a few feet of the "empty" drum. Two men were injured. Neither had read the warning on top of the metal drum. In affirming the jury verdict in favor of the two men, Arizona Court of Appeals said:

That the party who is injured might not have read or heeded warning is not always sufficient to disprove the existence of a causal relationship between the injury and the defect. Adequate warning could have actuated a policy in handling "empties" which would have prevented the accident. . . .

Furthermore, the adequacy of a warning label is not determined solely by reference to the words on the label but also by reference to the physical aspects of the warning, such as conspicuousness, prominence, and relative size of print. All of these physical aspects must be adequate to alert the reasonably prudent person. (Citing authority.) Here, the only label attached to the barrel was small in size, approximately 4" x 4". The jury could have determined that the physical aspects of this label were inadequate in light of the foreseeable risk of injury, and that if a larger and more conspicuous label was attached, it would have been seen, read and heeded.

There was substantial evidence from which the jury could have concluded that the failure of the defendants to provide an adequate warning was a factor in producing the injuries. Cause in fact was an issue for the jury. Prosser, The Law of Torts, Sec. 41 (4th ed. 1971).

581 P.2d at 280-281.

In a third case, the Indiana appellate court reversed summary judgment which had been entered in favor of a sulphur manufacturing firm. *Jarrell* v. *Monsanto Co., supra.* There, the injured user poured two fifty pound bags of sulphur into a storage bin which then exploded and burned the user. The worker had not read the warning label on the bags that sulphur dust in air ignites easily. Using this fact as well as others, the trial court entered summary judgment. The Indiana Court of Appeals reversed and said in part:

> In this case, [the user] admitted that warning labels appeared on the bags of sulphur but claims that he did not see any such warnings and did not read the labels. However, we cannot say as a matter law that the warnings on these labels, "WARNING!," "SULPHUR DUST SUSPENDED IN AIR IGNITES EASILY!" and "Avoid creating dust in handling!," sufficiently convey to a reasonable user the nature of the danger or the extent of the potential harm.

528 N.E.2d at 1163.

Finally, in *Spruill* v. *Boyle-Midway, Inc., supra*, the Fourth Circuit Court of Appeals affirmed a jury verdict in favor of the estate of a deceased 14-month-old child who died of chemical pneumonia after ingesting a small quantity of furniture polish. The Fourth Circuit described the labelling:

> On the front part of the label appear the words "Old English Brand Red Oil Furniture Polish" in large letters; beneath this in small letters "An all purpose polish for furniture, woodwork, pianos, floors". The reverse side of the label, the background of which is white, contains the following printed matter: at the top in red letters about 1/8th of an inch in height all in capitals, "CAUTION COMBUSTIBLE MIXTURE". Immediately beneath this in red letters 1/16th of an inch high "Do not use near fire or flame"; several lines down, again in letters 1/16th of an inch in height, in brown ink, all in capitals, the word "DIRECTIONS"; then follow seven lines of directions printed in brown ink in letters about 1/32nd of an inch in

height. On the eighth line in letters 1/16th of an inch high in brown ink appear the words "Safety Note"; following this in letters approximately 1/32nd of an inch in height:

> Contains refined petroleum distillates. May be harmful if swallowed, especially by children."

308 F.2d at 82. The mother of the child testified that she had read the large colored letters "CAUTION COMBUSTIBLE" but not the directions because she knew how to use furniture polish.

The court discussed the inadequacy of the warning relating to children:

> The notice here given was not printed on the label in such a manner as to assure that a user's attention would be attracted thereto. Indeed, we think one might reasonably conclude that it was placed so as to conceal it from all but the most cautious users. It is located in the midst of a body of print of the same size and color, with nothing to attract special attention to it except the words "Safety Note".
>
> Further, even if the user should happen to discover the warning it states only "contains refined petroleum distillates. May be harmful if swallowed especially by children." The first sentence could hardly be taken to convey any conception of the dangerous character of this product to the average user. The second sentence could be taken to indicate to the average person that harm is not certain but merely possible. The expert medical evidence in this case shows that "harm" will not be contingent but rather inevitable, to young and old alike. Moreover, the 1st phrase of the sentence hardly conveys the thought that very small quantity of the polish is lethal to children.

306 F.2d at 86. The court then went on to conclude:

> [H]ad the warning been in a form calculated to attract the user's attention, due to its position, size, and the coloring if its lettering and had the words used therein been reasonable calculated to convey a conception of the true nature of the danger, this other might not have left the product in the presence of her child.

306 F.2d at 87.

The majority cites two cases to support its affirmance. *Safeco Ins. Co. v. Baker*, 515 So.2d 655 (La. Ct. App. 1987); *Johnson v. Niagara*, 666 F.2d 1223 (8th Cir. 1981). Both cases are distinguishable. In *Johnson*, the Eighth Circuit Court of Appeals affirmed a directed verdict in favor of the manufacturer of a punch press due to the user's failure to read the warning. *Johnson v. Niagara Mach. & Tool Works*, 666 F.2d 1223 (8th Cir. 1981). In affirming the district court's decision, however, the Court observed in a footnote that the district court had found that the warning on the press was conspicuous and that the case did not involve an inadequate warning. The trial court in the case before us did not make similar findings on adequacy or conspicuousness.

In *Safeco Ins. Co.*, the user had failed to install a prefabricated fireplace correctly because he did not read all the pages in an installation booklet, and a fire to the home resulted. The Louisiana Court of Appeals reversed a jury verdict in favor of the installer for fire damage to his home on causation grounds. In that case no hazardous substance was involved; nor did the appellate court have before it the issue of whether a warning label was conspicuous.

A jury should decide if the warning on the Clorox bottle was in a form calculated to attract Bushong's attention and if conspicuous, was the wording of the warning adequate. Larger letters in color or a logo indicating toxicity like a skull-and-bones might well have averted injury in this case. At least, this was a question for the jury to consider. While failure to read a label with what is arguably an inadequate warning of a hazard might have surface appeal for disposing of this case, it really does not stand up under scrutiny. I would reverse the summary judgment and remand for trial.

HOLT, C.J., and NEWBERN, J., join.

# CLOROX® BLEACH *for a cleaner fresher laundry and household*

## Your laundry needs Clorox bleach:

For the broad range of laundry problems, no other detergent additive can give as cleaner, brighter wash.

**Brightens whites and removes stains** Clorox bleach works with detergent to remove tough dirt and stains that detergent alone cannot remove.

**Disinfects and eliminates odors** Clorox bleach disinfects and deodorizes laundry by eliminating most germs and lives odors.

**Boosts cold water cleaning power** Most detergents do not clean as well in cold or warm water. Clorox bleach gives your detergent extra cleaning power to remove stains and kill germs in cooler water.

**Safe for most color-fast washables** Clorox bleach brightens and sanitizes colored washables to check if a garment is bleach safe, try the Bleach-safe test, apply one drop of in test solution (1 tablespoon Clorox bleach plus 1/4 cup water) to a hidden part of the fabric. Check if colors are changing, then wait 1 minute. Then blot dry. No color change means the article can be safely laundered.

Write for a free Clorox "Guide to Clorox Wonders or other information on laundry and household cleaning to Clorox, P.O. Box 24305, Oakland, CA 94623

## Directions for laundry use:

**Pretreat stains and heavy soils** Stubborn stains may be removed for 5 minutes in a solution of 1/4 cup Clorox bleach in 1 gallon of cool sudsy water.

**Sort laundry** by color and fabric. Separate white from color, light colors from darks and avoid bleaching wool, silk, mohair, leather, spandex, and fabrics that have printed milled labels.

**Add bleach and detergent** Clorox bleach may be added to the wash water before laundry is put in, or for best results, mix with water in of water and add bleach 5 or 6 minutes after the wash cycle has begun. Use the recommended amount of Clorox bleach as shown. For very large loads, add slightly more Clorox bleach.

Regular
**Top Loading 1 cup
Automatic**

Large Top
**Loading**
**Automatic 1 1/2 cups**

Front
**Loading**
**Automatic .1/2 cup**

Hand Laundry
(2 gallons
sudsy water) **1/8 cup**

**Storage and disposal** Store Clorox bleach in a cool dry place. Do not reuse empty container, rinse container and put in trash collection.

## Precautionary Statements

## ⚠ WARNING:

**Hazards to humans and domestic animals**
Causes substantial but temporary eye injury. Do not get in eyes or on clothing. Harmful if swallowed. May irritate skin.

## Directions for household use:

It is a violation of Federal law to use this product in a manner inconsistent with its labeling.

Clorox bleach is a light-duty – low deodorizer and disinfectant for your home before and after use. Clorox bleach kills such household germs on surfaces first. Before use, wash surfaces in 1/4 cup Clorox bleach per 1 gallon of warm water. Let stand 5 minutes, then rinse.

**Toilet bowls** Flush toilet. Pour 1/2 cup of Clorox bleach into bowl. Brush. Let stand 10 minutes. Flush.

**Bathtubs and showers** Flush drains. Clean with a solution of 3/4 cup Clorox bleach per gallon of warm sudsy water. Let stand 5 minutes. Rinse.

**Kitchen sinks** Cover stains with 7/3 cup of water or 1 1/2 cup Clorox bleach. Let stand 5 minutes. Rinse.

**Floors, vinyl, tile, woodwork, and appliances** Clean with a solution of 3/4 cup Clorox bleach per gallon of sudsy water. Let stand 5 minutes. Rinse.

**Physical and chemical hazards** Strong oxidizer. Flush drains before and after use. Do not use or mix with other household chemicals, such as toilet bowl cleaners, rust remover, acid or ammonia containing products. To do so will release hazardous gases. Prolonged contact with metal may cause pitting or discoloration.

**First aid treatment** If in eyes, remove contact lenses, rinse with plenty of water for at least 15 minutes. If swallowed, drink a glassful of water. In either case, call a physician. If contact with skin, immediately remove contaminated clothing and wash skin thoroughly with water.

© 1987 The Clorox Company, Oakland, CA 94612 Made in USA

0 44600 00104

