# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1836

_____

Henry W. Boerner, Individually and    *
as Administrator of the Estate of    *
Mary Jane Boerner, Deceased,    *
   *
       Appellant,    *    Appeal from the United States
   *    District Court for the
     v.    *    Eastern District of Arkansas.
   *
Brown & Williamson Tobacco    *
Corporation,    *
   *
       Appellee.    *

_____

Submitted:  January 8, 2001

Filed:  August 6, 2001

_____

Before WOLLMAN, Chief Judge, BYE, Circuit Judge, and JONES,[1] District Judge.

_____

WOLLMAN, Chief Judge.

The district court granted summary judgment to Brown & Williamson Tobacco Company in this action arising from Mary Jane Boerner's development of and death from lung cancer.  We affirm in part and reverse in part.

---

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

**I.**

Mary Jane Boerner (Mrs. Boerner) began smoking in 1945, at the age of fifteen. Pall Mall cigarettes, an unfiltered variety manufactured by the American Tobacco Company, were her brand of choice until 1981, when she quit with the encouragement of her family and through the "intervention of God." Mrs. Boerner was diagnosed with lung cancer in July of 1996, and she and her husband, Henry Boerner (Boerner), filed suit against Brown & Williamson Tobacco Company, American Tobacco's successor, in June of 1998. Mrs. Boerner died on August 26, 1999, and Boerner has pursued the claims on his own behalf and as the administrator of Mrs. Boerner's estate.

Mrs. Boerner was a relatively healthy woman until she developed cancer. According to her February 17, 1999, deposition, she exercised daily, ate primarily fruits and vegetables and avoided fatty foods, and did not use alcohol or engage in high-risk behaviors. As a result, she rarely had reason to visit her doctor. She made a number of brief attempts to quit smoking before 1981, but was plagued by cigarette cravings each time and, because she was not particularly serious about quitting, quickly reverted to smoking. After she made the decision to stop smoking in 1981, however, she never smoked again.

Mrs. Boerner testified that, for much of her time as a smoker, she was unaware of the relationship between smoking and lung cancer. Health warnings on cigarette packages underwent three changes during Mrs. Boerner's lifetime. When she began smoking in 1945, no warnings were given. Then, in 1966, the congressionally mandated warning that "SMOKING MAY BE HAZARDOUS TO YOUR HEALTH" was placed on all cigarette packages. Mrs. Boerner quoted this warning in her deposition testimony, noting that she supposed she had taken the "may" literally. In 1969, the warning was reformulated to read that the Surgeon General had determined that "SMOKING IS HAZARDOUS TO YOUR HEALTH." Mrs. Boerner remembered that a change had been made, but was unable to recall during her deposition the wording of the 1969

warning. Finally, in 1984, three years after Mrs. Boerner quit smoking, the current set of health warnings appeared, citing the connections between cigarettes and specific health risks.

Although Mrs. Boerner was familiar with cigarette advertising campaigns during her time as a smoker, she did not read newspapers or magazines other than Reader's Digest. She and her husband both testified that Boerner sometimes pointed out articles about smoking in the local paper, which he read every day. Mrs. Boerner, however, did not specifically recall much of the media discussion of the health effects of smoking. Boerner, himself not a smoker, testified that had he better understood the health risks posed by smoking, he would have increased his efforts to convince his wife to stop. Boerner's primary concerns with his wife's smoking were a fear that she might drop ashes on their son when he was an infant and, later, that the smoke seemed to aggravate the boy's asthma.

The Boerners' complaint sought compensatory and punitive damages for personal injuries and loss of consortium under theories of fraud and deceit, negligence, and strict liability. In sum, they alleged that Mrs. Boerner was addicted to cigarettes by 1948, that the cigarettes she smoked were unreasonably dangerous because of defective design and inadequate warning, and that her lung cancer was caused by her smoking. After Mrs. Boerner's death, the complaint was amended to include wrongful death claims. Brown & Williamson moved for summary judgment on a number of Boerner's claims. In response, Boerner submitted an array of medical data and tobacco advertisements spanning the period during which Mrs. Boerner smoked, as well as affidavits and depositions from both of the Boerners and from two physicians, Dr. Martin Blinder and Dr. Allan Feingold.

Boerner appeals from the district court's grant of summary judgment in favor of Brown & Williamson on four issues: (1) the pre-1969 inadequate warning claims, (2) the 1969-81 inadequate warning claims, (3) the defective design claim, and (4) the

claim for breach of a duty voluntarily undertaken. We affirm the district court's grant of summary judgment on the 1969-81 inadequate warning and the breach of duty claims, but reverse and remand on the 1945-69 inadequate warning and the design defect claims.

## II.

We review the grant of summary judgment de novo, applying the same standard as the district court and viewing all the facts and inferences in the light most favorable to the non-moving party. Rabushka v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997). A grant of summary judgment is appropriate only where the moving party has demonstrated that there is no genuine issue of material fact such that no reasonable jury could return a verdict for the non-moving party. Id. "The moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The parties do not dispute that Arkansas law controls in this diversity case. See First Bank of Marietta v. Hogge, 161 F.3d 506, 510 (8th Cir. 1998). We review the district court's determination of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Lockley v. Deere & Co., 933 F.2d 1378, 1383 (8th Cir. 1991).

Two Arkansas statutes provide the framework for strict liability claims. Section 4-86-102 sets forth the elements of a strict liability claim.

> (a) A supplier of a product is subject to liability in damages for harm to a person or property if:
> (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;
> (2) The product was supplied by him in a defective condition which rendered it unreasonably dangerous; and
> (3) The defective condition was a proximate cause of the harm to person or to property.

(b) The provisions of subsection (a) of this section apply although the claiming party has not obtained the product from or entered into any contractual relation with the supplier.

Ark. Code Ann. § 4-86-102 (Michie 1996). Section 16-116-102 defines the relevant terms.

(4) "Defective condition" means a condition of a product that renders it unsafe for reasonable foreseeable use and consumption; . . .

(7) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user, who acquires or uses the product, assuming the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess. However, as to a minor, "unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by an ordinary and reasonably careful minor considering his age and intelligence.

Ark. Code. Ann. § 16-116-102 (Michie 1996).

Thus, a supplier of a product is strictly liable for an injury caused by the product if (1) the product is in a defective condition that rendered it unreasonably dangerous, and (2) the defective condition was a proximate cause of the injury. Hill v. Searle Labs., 884 F.2d 1064, 1066 (8th Cir. 1989); Bushong v. Garman Co., 843 S.W.2d 807, 812 (Ark. 1992). The plaintiff may prove the defective condition by showing defective design, defective manufacture, or inadequate warning. Hill, 884 F.2d at 1066-67.

## A. Inadequate Warning Claims

### 1. Federal Preemption

Prior to 1966, no health warning appeared on cigarettes. Between 1966 and 1969, cigarette packs displayed the congressionally mandated warning that "CIGARETTE SMOKING MAY BE HAZARDOUS TO YOUR HEALTH." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 514 (1992). The 1966 requirement did not, however, preempt claims that the warning was inadequate. Id. at 518. Thus, if Boerner can establish a claim under Arkansas's strict liability statute sufficient to survive summary judgment, he may proceed with his 1945-69 inadequate warning claims free of federal preemption.

We are not, however, persuaded by Boerner's argument that his claims for inadequate warning after 1969 are not preempted by federal law. The district court correctly concluded that Cipollone precludes a finding that such claims are not preempted by federal labeling requirements. 505 U.S. at 522-31 (Public Health Cigarette Smoking Act of 1969 preempts claims for inadequate warning of the health dangers of cigarettes after 1969). We therefore affirm its dismissal of the 1969-1981 claims for inadequate warning.

### 2. Presumptive Effectiveness of an Adequate Warning

Under Arkansas law, once a plaintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded an adequate warning. Bushong, 843 S.W.2d at 811. In granting summary judgment on Boerner's 1945-69 claims, the district court concluded that Brown & Williamson had successfully rebutted the presumption and was therefore entitled to judgment as a matter of law.

Boerner contends that the district court misapplied Arkansas law on the heeding presumption. He contends that the Arkansas heeding presumption shifts to the

defendant the burden of persuasion that an adequate warning would not have been read and heeded, and that, because of that burden, summary judgment in Brown & Williamson's favor was inappropriate. Brown & Williamson contends that even if it did bear the burden of persuasion under Arkansas law, summary judgment was nonetheless appropriate because, in light of the evidence as a whole, no reasonable jury could have concluded that a warning would have been heeded. We disagree.

The district court summarized the Arkansas heeding presumption as follows: "Under the Bushong rule, the burden shifts to the defendant to show that an adequate warning would not have been heeded by the plaintiff and thus futile. Once the defendant provides this evidence, the presumption becomes a nullity and the burden remains with the plaintiff to prove causation."

In Bushong, the defendants contended that, because a custodian admitted that he had not read the labels on two cleaning products before mixing them and releasing a toxic gas, any warning would have been futile. In ruling on this issue, the Arkansas Supreme Court adopted the Louisiana rule on presumption,

> We think the better rule is that failure to read a label does not automatically preclude a claim for inadequate warning. We find the rule applied in Safeco Ins. Co. v. Baker, 515 So. 2d 655 (La. Ct. App. 1987) particularly persuasive and we adopt the reasoning therein. Safeco holds the plaintiff originally has the burden of proving the warnings or instructions provided were inadequate. Once a plaintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions. This presumption may be rebutted by evidence "which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." In this case, appellant himself admitted that he had never read a label on a cleaning product during the three years he worked at Stewart Electric. Given this, we cannot say the trial court erred in finding appellant's failure to read the label precluded his claim as any

warning or instruction would have been futile since appellant would not have read it.

Bushong, 843 S.W.2d at 811 (citations omitted).

In Safeco, the Louisiana Court of Appeals quoted extensively from the decision of that state's supreme court in Bloxom v. Bloxom, 512 So. 2d 839 (La. 1987).

"An essential element of the plaintiff's cause of action for failure to adequately warn of a product's danger is that there be some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered. Once a plaintiff proves that the lack of an adequate warning or instruction rendered the product unreasonably dangerous, his cause in fact burden is assisted by a presumption: when a manufacturer fails to give adequate warnings or instructions, a presumption arises that the user would have read and heeded such admonitions. The presumption may, however, be rebutted if the manufacturer produces contrary evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances."

Safeco, 515 So. 2d at 657 (quoting Bloxom, 512 So. 2d at 850; other citations omitted). The court in Bloxom went on to apply the standard:

Assuming the role of the trier of facts once again, we conclude that because the plaintiffs proved that the manufacturer failed to give adequate warnings as to the Firebird's incendiary propensities, a presumption arose that the user . . . would read and heed such a warning had it been given. However, when we examine the evidence, we find that the manufacturer has fulfilled not only its burden of producing contrary evidence but also its burden of persuading us that even an adequate warning in the owner's manual would have been futile in this case. [The plaintiff] testified on both direct and cross examination that he had not read any part of his owner's manual prior to the fire. He stated that it was not his practice to refer to an automobile operator's manual unless there was something

wrong with the car. Accordingly, even if an adequate warning of the particular danger in this case had been given by a proper provision in the manual, such a warning would have been futile because [the plaintiff] did not read the manual before parking his car over combustible materials.

Bloxom, 512 So. 2d at 850-51. Thus, under the Louisiana approach adopted in Bushong, summary judgment is appropriate in favor of the defendant only where its evidence is sufficient to carry "not only [the] burden of producing contrary evidence but also [the] burden of persuading [the trier of fact] that even an adequate warning would have been futile" as a matter of law. Id. at 851.

Other states have adopted similar presumptions. For instance, the United States District Court for the Southern District of New York, applying New York law, described the operation of that state's heeding presumption:

There is, in New York, a presumption that a user would have heeded warnings if they had been provided, and that the injury would not have occurred. The presumption can be rebutted by proof that an adequate warning would have been futile since plaintiff would not have read it. However, it is the manufacturer who has the burden of proving that, even if adequately warned, the plaintiff would not have read the warnings and his behavior would have been unchanged. Summary judgment is appropriate only when that burden has been met to the level of negating the existence of a genuine factual issue.

Anderson v. Hedstrom Corp., 76 F. Supp. 2d 422, 441-42 (S.D.N.Y. 1999) (citations omitted). In Rowson v. Kawasaki Heavy Industries, the United States District Court for the Northern District of Iowa cited Bushong affirmatively in reaching its conclusion that, under Iowa law, even in a case in which the plaintiff admitted that he had not read the warnings that were given, "whether the presumption has been rebutted is a question of fact for the jury, not a question of law for the court appropriate for determination on a motion for summary judgment." 866 F. Supp. 1221, 1238 (N.D. Iowa 1994).

-9-

The presumption that an adequate warning would have been read and heeded does not eliminate Boerner's ultimate burden of proving that the inadequate warnings were the proximate cause of Mrs. Boerner's illness. On this point, we find the analysis of the New Jersey Superior Court helpful. In discussing New Jersey's burden-shifting presumption, the court concluded that the presumption that an adequate warning would have been heeded entitles a plaintiff to summary judgment on that issue unless the defendant produces evidence sufficient to raise a genuine issue of material fact. Graves v. Church & Dwight Co., 631 A.2d 1248, 1256 (N.J. Super. Ct. App. Div. 1993).

> Conversely, it is logical to conclude that rebuttal evidence sufficient to create a genuine issue of fact so that the "minds of reasonable men" could find that the presumed fact had not been established, is the quantum of evidence necessary to overcome the presumption, and is sufficient to make the existence or non-existence of the presumed fact a question for the jury.
>
> The burden of coming forward with evidence to rebut the presumption is on the defendant, but the burden of proof never shifts from the plaintiff. That is to say, once the presumption is rebutted, the risk of non-persuasion remains with the party upon whom the burden of proof was originally placed, in this case, on the plaintiff.

Id. at 1256-57 (citations omitted).

To summarize, then, once the defendant submits evidence tending to rebut it, a rebuttable presumption that shifts to the defendant the burden of persuasion on futility operates in one of two ways. If the defendant produces evidence so strong that it would necessarily persuade any reasonable trier of fact that an adequate warning would have been futile, the defendant is entitled to have causation determined as a matter of law. Bushong, in which the plaintiff admitted that he had not read a label on a cleaning product during the three years he worked for his employer, falls into this category. 843 S.W.2d at 811. If, however, the evidence offered to rebut the presumption, weighed

-10-

against any evidence offered to support it, would permit reasonable minds to differ on whether an adequate warning would have been read and heeded, the question of causation is properly submitted to a jury, and the plaintiff bears the ultimate risk of non-persuasion that an adequate warning would have prevented the plaintiff's injury.

In this case, the evidence established that no warning was given between 1945 and 1966, and that Mrs. Boerner read the warning that appeared in 1966. The question, then, is whether the record evidence demonstrates a genuine issue of material fact as to whether she would have heeded an adequate warning. The district court concluded that Boerner had made out a prima facie case that the 1966 warning was inadequate, which raised the presumption that an adequate warning would have been read and heeded. It then determined that Brown & Williamson was entitled to have causation determined as a matter of law. First, it concluded that Mrs. Boerner's statements that her health was not a factor in her decision to stop smoking precluded a jury from finding that she would have heeded a more stringent health warning. In order to sustain this conclusion, the evidence must incontrovertibly establish that Mrs. Boerner would not have stopped smoking for health reasons even if she had been given an adequate warning. Boerner, however, submitted evidence that his wife was a health-conscious individual who avoided high-risk behavior and took active steps to promote her health and that her family members' wishes, which were part of her decision to quit smoking, would have been influenced by more graphic, pointed, health-specific warnings.

Second, the district court concluded that Mrs. Boerner's acknowledgment that she read and ignored post-1966 warning labels indicated that an adequate warning would have been futile. Brown & Williamson argues that Dr. Blinder's affidavit, which stated that Mrs. Boerner's addiction produced a "selective inattention" to information indicating that smoking was dangerous, supports this conclusion because it indicates that she would have ignored any warning. This, it argues, coupled with the fact that Mrs. Boerner had paid very little attention to the post-1969 warning, precludes a finding that any warning could have prevented her illness.

-11-

We conclude that the district court erred in holding that, in the light of Boerner's evidence, an adequate warning would have been futile. Mrs. Boerner's family members' requests that she stop smoking would have been stronger had stronger warnings been given. See Anderson, 76 F. Supp. 2d at 444-45 (presumption not rebutted where adult plaintiff did not read an inadequate warning but his father had read and explained it to family members). Mrs. Boerner's ability to stop smoking in 1981 demonstrated that her addiction was not so extreme as to render her unable to absorb and respond to any information suggesting that she ought to stop smoking. Moreover, Dr. Blinder opined that a more specific and dire warning could overcome an addict's selective inattention.

Taking these facts in the light most favorable to Boerner, we cannot agree with the district court's conclusion that no reasonable juror could conclude that an adequate warning would have been heeded. Unlike the Bushong plaintiff, Mrs. Boerner read the allegedly inadequate warning when it appeared in 1966. The factual question whether an adequate warning would have been sufficiently effective to overcome Mrs. Boerner's addiction and prevent her illness is one for a jury. Accordingly, we reverse the district court's grant of summary judgment on Boerner's failure to warn claims that are not preempted by federal law.

**B. Design Defect Claims**

Boerner contends that the court's grant of summary judgment on his defective design claims was erroneous because it was based on an incorrect assumption that Arkansas law requires a plaintiff to show that a design is defective by demonstrating that a safer alternative design was feasible. Brown & Williamson responds by arguing that in light of Boerner's failure to demonstrate that Pall Mall cigarettes would not have been unreasonably dangerous had they been manufactured in accordance with his suggested alterations, his evidence was insufficient to support a jury finding that a design defect was the proximate cause of Mrs. Boerner's illness and death.

-12-

Despite Brown & Williamson's arguments to the contrary, our case law makes clear that a defective design can be established under Arkansas law without proof of a safer alternative design. French, 656 F.2d at 298 ("It is apparent that [the statutory] definitions of the key terms in the strict liability statute contain no requirement that a feasible and safer alternative be proven by the plaintiff and we see no reason to impose that requirement."). "[U]nder Arkansas law the existence, practicality, and technological feasibility of an alternative safe design are not necessary elements of the plaintiff's cause of action, but rather are merely factors that may be considered by the jury in determining whether a product was supplied in a defective condition that rendered it unreasonably dangerous." Id. at 298-99. Indeed, our review of Arkansas's products liability law reveals that its general tendency is to submit such factual questions to the jury to weigh in light of all the evidence. See, e.g., Aderhold, 616 S.W.2d at 722-23 (whether "open and obvious" nature of danger posed by product and compliance with industry standard rendered design of product not defective were considerations for jury, not questions of law that could bar recovery); Hill, 884 F.2d at 1070 (whether prescription IUD was sufficiently socially important to fall within the exception for unavoidably unsafe products was not an appropriate question for summary judgment).

We have recognized that when a plaintiff's sole proof of a defective design is the designer's choice not to pursue a safer design, the evidentiary burden is on the plaintiff to show that the safer alternative design he advocates actually exists. Dancy v. Hyster Co., 127 F.3d 649, 653-54 (8th Cir. 1997) (upholding a grant of summary judgment against a plaintiff who alleged that a lift truck was unreasonably dangerous because it lacked a safety device but failed to provide expert testimony to support the proposition that a feasible safety device existed). Arkansas law does not, however, require a plaintiff alleging defective design to point to a specific design flaw resulting in a product that poses a danger greater than that inherent in products of its kind. Buchanna v. Diehl Mach. Inc., 98 F.3d 366, 370 (8th Cir. 1996) (Arkansas law does not require

that a plaintiff show that a product poses a danger not posed by similar products in order to avoid summary judgment, although trier of fact may consider such evidence).

The sufficiency of Boerner's defective design allegation rests on the content of Dr. Feingold's third affidavit. That affidavit states, in relevant part:

2. The Pall Mall cigarette is defective and unreasonably dangerous because:
   - ! It delivers excessive amounts of carcinogens and other harmful ingredients;
   - ! It is engineered for inhalation; and
   - ! It delivers harmful and addictive quantities of nicotine.

3. The medical literature contains abundant references to the various methods that were available to the manufacturers of this cigarette to reduce its harmful potential.

4. In particular, reduced hazard products were feasibly designed and sold. Reduced hazard products of several different types were feasible. These included the following:
   - ! Noncombustible cigarettes such as Arial [sic], Premier, Eclipse, and Accord, where were actually manufactured [sic], and which did not burn tobacco. Their smoke yields of carcinogens were highly reduced;
   - ! Combustible nontobacco cigarettes such as Cytrel were also feasible. They demonstrated improvements in cancer tests and did not contain addictive levels of nicotine;
   - ! Improvements in combustible cigarettes included agricultural practices (use of low nitrate, low nicotine tobacco) and cigarette engineering (improvement of filtration quality, reduction in gaseous ciliatoxins; reduction of specific particulate carcinogens such as PAH's and TSNA's; alteration of nicotine delivery to reduce addiction);
   - ! The most important feasible improvement in Pall Mall cigarette [sic] would have been to reduce available nicotine delivery to below the threshhold necessary to sustain or initiate addiction,

-14-

which is probably around .1 milligram per cigarette. Technology to accomplish this was readily available as shown in the medical literature from the mid 1960's onward.

5. Lung cancer is a dose-response disease, and Mrs. Boerner's lung cancer was no exception. Her disease was the cumulative result of a succession of genetic mutations caused by the carcinogens in cigarette smoke. The number and rate of mutations is related to the concentration and cumulative dose of carcinogens. The cumulative dose of carcinogens is related (a) to their concentrations in cigarette smoke; (b) to delivery factors such as inhalation and smoke chemistry; and (c) to the amount of smoke consumed. The addictiveness of nicotine is the primary mediator of the lifetime smoke dose.

We conclude that Dr. Feingold's affidavit is sufficient to allow Boerner's design defect claim to survive summary judgment on the theory that the Pall Mall cigarette, as designed, was an unreasonably unsafe product. Boerner's evidentiary burden was to show (1) that Pall Mall cigarettes were supplied in a defective condition that rendered them unreasonably dangerous, and (2) that the defective condition was a proximate cause of Mrs. Boerner's lung cancer. See Bushong, 843 S.W.2d at 1066. The district court concluded that the safer alternatives put forward by Dr. Feingold "are still unreasonably dangerous." Presumably, then, the less safe design actually used was also unreasonably dangerous. Under Arkansas law, Dr. Feingold's statements that the Pall Mall cigarette delivers excessive amounts of carcinogens, is engineered for inhalation, and administers an addictive dose of nicotine are sufficient to create a jury issue as to whether the cigarette was sold in a defective condition.[2]

_____

[2]We note that a number of courts have considered the question whether a safer alterative design is an element of a defective design claim and have concluded that the determinative factor is the underlying state law. Compare Ghuilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 276 (D.R.I. 2000) (plaintiff could proceed on design defect claim under Rhode Island law without showing safer alternative designs existed) and O'Brien v. Muskin Corp, 463 A.2d 298, 305 (N.J. 1983) (same holding under New

-15-

Dr. Feingold's statement that Mrs. Boerner's lung cancer was caused by exposure to the carcinogens in cigarette smoke is sufficient to create a jury issue on proximate cause. In reaching this conclusion, we have considered the district court's conclusion that Mrs. Boerner would not have used a safer alternative product because she disliked filtered cigarettes, and find it to be beside the point. Under Arkansas law, contributory negligence is no bar to recovery under a strict liability theory. Lockley, 933 F.2d at 1381 (question whether plaintiff's conduct was cause of injury is a question of fact for a jury). The existence of a filtered cigarette is irrelevant to the question whether Mrs. Boerner's illness was caused by her use of a cigarette supplied in a defective condition that rendered it unreasonably dangerous, just as the existence of a table saw with a safety guard would be irrelevant to the question whether the loss of a finger was caused by a saw supplied with no safety guard. Moreover, Boerner alleges that Mrs. Boerner's decision not to smoke filtered cigarettes was itself a result of the defective condition of the Pall Malls she smoked: their addictiveness.[3]

Summary judgment is appropriate only where the non-moving party has failed to create a genuine issue of material fact on some essential element of his claim. Rabushka, 122 F.3d at 562. The feasibility of alternative designs, including the extent to which they succeed in making the product safe, is not an essential element of a design defect claim under Arkansas law. French, 656 F.2d at 298-99. We therefore reverse the district court's grant of summary judgment on Boerner's design defect claims.

---

Jersey law) with Hernandez v. Tokai Corp., 2 S.W.3d 251, 258 (Tex. 1999) (Texas statute requires plaintiff alleging design defect to show safer alternative design would have prevented injury).

[3]Filtered cigarettes administer a lower dose of nicotine than unfiltered cigarettes; Mrs. Boerner testified in her deposition that this lower dose of nicotine did not "satisfy" her, and that she therefore avoided filtered cigarettes.

## C. Breach of a Duty Voluntarily Undertaken

Boerner's final contention is that the district court erred in dismissing his claim for damages based on Brown & Williamson's breach of a duty voluntarily undertaken. Under this theory, set forth in § 324A of the Restatement (Second) of Torts and recognized by the Arkansas Supreme Court in Wilson v. Rebsamen Insurance., Inc., 957 S.W.2d 678 (Ark. 1997), one who voluntarily assumes a duty owed another is liable to a third party injured by a breach of that duty. Boerner contends that by publicly representing that they would pursue public health research about the dangers of cigarette smoking, Brown & Williamson and other cigarette manufacturers assumed a duty that they breached by withholding information on the health ramifications and addictiveness of cigarettes. In Wilson, a company's duty to maintain a safe workplace was assumed by contract by an insurance company, and an employee who was subsequently injured when that duty was breached was allowed to recover damages from the insurance company. Id. at 678. We decline to extend the holding in Wilson to the facts of this case, as Boerner has not cited any authority to show either that the public health community owed him or Mrs. Boerner a legally enforceable duty or that such a duty could be assumed, under Arkansas law, through unilateral public statements. Thus, we affirm the district court's dismissal of Boerner's breach of duty claim.

The judgment is affirmed as to the breach of duty and the 1969-81 inadequate warning claims. The judgment with respect to the 1945-69 inadequate warning and the defective design claims is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.